THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID J. EWEN, Defendant-Appellant.

Second District   No. 2—88—0894

Opinion filed February 23, 1990.

Phyllis J. Perko, of Harlovic & Perko, of West Dundee, and James M. Boback, of Boback & Bianchi, Ltd., of Crystal Lake, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, David J. Ewen, was indicted in the circuit court of McHenry County, for the offense of child pornography, in violation of section 11—20.1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(2)). Defendant was convicted of the offense following a bench trial. He was sentenced to a term of probation for 12 months, a fine of $1,000, and 50 hours of public service work.

On appeal, defendant presents three issues: (1) is the child pornography provision unconstitutional; (2) should defendant's motions to suppress evidence and statements have been granted; and (3) was the proof of mental element sufficient beyond a reasonable doubt?

The statute under which defendant was convicted provides in part:

"(a) A person commits the offense of child pornography who:

\* \* \*

(2) with the knowledge of the nature or content thereof, \*\*\* possesses any \*\*\* photograph or other similar visual reproduction of any child whom the person knows or reasonably should know to be under the age of 18 engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection." (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(2).)

Subparagraph (vii) provides as follows:

"(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the genitals of the child or other

person ***." Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(1)(vii).

The indictment charged that

"the said defendant, with knowledge of the nature and content thereof, did possess photographs of children whom he knew or reasonably should have known to be under the age of 18, who were depicted and portrayed in poses and postures involving lewd exhibitions of genitals of said children in violation of Illinois Revised Statutes 1987, chapter 38, paragraph 11—20.1(a)(2)."

In 1985, the statute we have set forth above made possession of child pornography an offense under the Criminal Code.

The defendant, a 43-year-old unmarried male, resides with his elderly mother in the family home where he has resided all of his life.

About 10 years before his arrest in this case, the defendant placed an ad in a Los Angeles, California, magazine giving his name and address, and the following:

"Wanted—Photos/slides of nude little girls, 6 to 15—bold, revealing poses. Also nude pre-teen sisters, brothers/sisters. Strong action or training poses. Samples please."

Thereafter, the Illinois Department of State Police was informed by the Los Angeles, California, police department that the defendant had placed the advertisement described above. Sergeant James Turner of the Illinois State Police and a member of the Division of Criminal Investigation, Child Exploitation Unit, testified that he wrote an undercover letter to defendant on September 9, 1986, which asked for a meeting with the defendant. The letter, signed with a fictitious name, implied that the writer and Mr. Ewen shared a common interest in collecting and taking photographs which required some discretion. The defendant did not respond to this letter.

On November 24, 1986, Sergeant Turner again wrote a letter to defendant using the fictitious name. This letter included an order form for photographs of boys and girls in sex action. The letter suggested that the writer and Mr. Ewen meet. Mr. Ewen took this letter to the Woodstock police department, asking that they take appropriate action. The Woodstock police department notified Sergeant Turner of their receipt of the letter from Mr. Ewen.

Sergeant Turner and Detective Schultz met at the Woodstock police department, and they decided to go to Mr. Ewen's home to discuss the complaint he had about the letter that was sent to him in November.

Sergeant Turner, Detective Schultz, and special agent Melinda

Pharis, also of the Illinois State Police, went to defendant's home. Defendant's mother met them at the door and ushered them into the foyer, where they met defendant, who came up and asked them to come into the living room.

Sergeant Turner told Mr. Ewen that his name was on a police intelligence file of known child pornography subscribers. Turner showed Ewen a copy of the ad he had placed many years before in the Los Angeles publication. Turner told Ewen they wished to search the house because they believed that he was in possession of child pornography. Turner asked defendant for his signature on a permission-to-search waiver form. Ewen signed the form.

Defendant, Sergeant Turner, Detective Schultz and special agent Pharis went to the doorway of defendant's bedroom. Ewen went to a cabinet inside the bedroom, took out two parcels, handed them to Sergeant Turner, and said something to the effect: "This is what you are looking for."

The two parcels were manila envelopes. One was postmarked March 27, 1976, from Ontario, Canada, and contained two pamphlets titled Tuesday's Child and showing nude children. The other manila envelope was postmarked October 11, 1978, and was from the Netherlands. It contained advertising matter.

The women police agents searched the bedroom and found two more packages of material they believed to be child pornography. During this search Mr. Ewen conversed with Sergeant Turner and that culminated in his giving a written statement which was introduced as people's exhibit No. 2.

The police took the materials given to them by Mr. Ewen, the materials found by the policewomen, and Mr. Ewen's written statement and departed. Two weeks later defendant was arrested and charged with child pornography.

The defendant filed three pretrial motions. The first was a "motion for discharge" which alleged various constitutional defects in the statute defendant allegedly violated. The trial court denied this motion. The defense filed a motion to suppress evidence and a motion to suppress confessions. A hearing on these motions was held, and, thereafter, the trial court denied the motions.

A bench trial was conducted by the trial court which found the defendant guilty of child pornography and sentenced defendant as heretofore outlined. Post-trial motions were filed and denied, and this appeal followed.

Defendant's initial contention is that the statutory prohibition against possession of child pornography found in section 11—20.1 of

the Criminal Code of 1961 (the statute) (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1) is unconstitutional as a violation of his right to privacy. He, however, acknowledges that *stare decisis* binds this court to reject his argument on this issue by reason of our supreme court's decision in *People v. Geever* (1988), 122 Ill. 2d 313. *Geever* is dispositive of this issue, and we are bound to follow the decision therein. We must, therefore, reject defendant's argument based on the dissent filed in that case.

The defendant also challenges the constitutionality of the statute on the ground that the statute is overly broad in violation of the United States and Illinois Constitutions (U.S. Const., amends. I, XIV; Ill. Const. 1970, art. I, §§4, 6).

This overbreadth, the defendant asserts, exists because of the statute's failure to exclude nonobscene portrayals from its scope. The defendant cites our supreme court's opinion in *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 209, where the court stated:

"A governmental purpose to control or prevent activities constitutionally subject to State regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."

The defendant argues that the statute subjects to prosecution any person who "films, videotapes, photographs or otherwise depicts or portrays by means of any similar visual medium or reproduction of any child," and then the statute enumerates various sexual acts. (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(1).) The defendant points out that the statute does not require that those acts be obscene in accordance with the established tripartite determination of obscenity. Ill. Rev. Stat. 1987, ch. 38, par. 11—20(b).

In *New York v. Ferber* (1982), 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348, the United States Supreme Court was called upon to determine the constitutionality of a New York criminal statute which prohibited persons from knowingly promoting sexual performances by children under the age of 16 by distributing material which depicts such performances. In that case the United States Court of Appeals proceeded on the assumption that the standard of obscenity incorporated in the New York statute, which followed the guidelines of *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, constituted the appropriate line dividing protected from unprotected expression by which to measure a regulation directed at child pornography. It was on the premise that "non obscene adolescent sex" could not be singled out for special treatment that the United States Court of Appeals held that statute invalid. On appeal,

the United States Supreme Court reversed the Court of Appeals. It held that the nature of the harm to be combated requires that the State offense be limited to works that visually depict sexual conduct by children below a specified age. It held that the category of "sexual conduct" proscribed must also be suitably limited and described. It held that the test for child pornography is separate from the standard enunciated in *Miller*. *Ferber*, 458 U.S. at 764, 73 L. Ed. 2d at 1127, 102 S. Ct. at 3358.

In *Ferber* the defendant also contended that the statute was overly broad because it would forbid the distribution of material with serious literary, scientific, or educational value or material which does not threaten the harms sought to be combated by the State. The United States Supreme Court rejected this view. It held that the State's special and compelling interest in protecting children who are especially vulnerable affords the State the leeway necessary to prohibit the activity specified by the statute. The Supreme Court pointed out that it has never held a statute invalid on its face merely because it is possible to conceive of a single impermissible application. 458 U.S. at 772, 73 L. Ed. 2d at 1132, 102 S. Ct. at 3362.

█ Under these principles the defendant's challenge to the scope of this statute fails. The statute is not overly broad because it does not require that the child pornography prohibited be obscene. The defendant also argues that the statute is overly broad because it does not "limit its purview to living or even actual children." The defendant argues that where a depiction is merely a fictitious likeness of a child, there is no child to protect. The defendant further argues that the State has no legitimate interest in protecting actual children who are artistically depicted in a nonobscene sexual manner.

As to the former argument, the trial judge gave a limiting instruction which set forth that "any child" must be construed to mean any real child. Therefore, the overbreadth challenge fails on this issue. As to the latter argument, we are not convinced that the defendant has met his burden to show that the statute is unconstitutional with evidence that children will not be harmed by dissemination of themselves in sexual contexts described in section 11—20.1 merely because the material is deemed "artistic."

The defendant next contends that the statute in question violates the due-process clause of the Federal and State Constitutions. (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2.) He points out that a statute violates due process if it is not reasonably designed to remedy an evil legitimately identified by the legislature. (*People v. Wagner* (1982), 89 Ill. 2d 308.) He asserts that the statute at issue

here applies to nonobscene sexual materials involving children "under the age of 18." (Ill. Rev. Stat. 1987, ch. 38, pars. 11—20.1(a)(1) through (a)(5).) He points out that the purported purpose of the statute is "society's 'most compelling' interest to protect its children from the lasting harm of emotional and sexual degradation," but that applying the statute to all individuals under the age of 18 is not reasonably related to a legitimate State purpose because some persons under 18 are not necessarily children in need of protection.

Defendant in this context points out a person may marry at 16, is treated as an adult at 17 for purposes of criminal prosecution, may be convicted of a crime as young as 13, and may be emancipated before the age of 18. He then argues that because of the above there is no legitimate governmental purpose in trying to protect these people.

■ We reject defendant's argument. It is of no consequence that the State treats children at different ages differently for certain legal purposes. The disparity of ages does not demonstrate that the legislative action is irrational. The State has a special interest in protecting the well-being of its youth. (*Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 607, 73 L. Ed. 2d 248, 257, 102 S. Ct. 2613, 2620.) This special and compelling interest, and the particular vulnerability of children, afford the State leeway to regulate pornographic material, the promotion of which is harmful to children.

The defendant next contends that the statutory provision violates the equal protection clauses of the Federal and State Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2 (in its creation of exemptions for certain groups of persons); Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(b)(3).) He asserts that the classification scheme is not reasonable and must fail.

The defendant points out that the statutory section to which he refers exempts from its reach "professional education programs conducted by licensed physicians, psychologists or social workers." This exemption, he argues, shows that child pornography may have at least some educational or scientific value, and it is unreasonable, he asserts, to limit the exercise of the scientific or educational function of child pornography to members of the three listed professions. In so doing, he asserts, it discriminates against individuals outside those professions who may wish to undertake a serious study of child pornography.

■ The determination of whether a given legislative classification denies persons the equal protection of the law is an extremely sensitive area of judicial review. But, where a person is not a member of the suspect class or has not been deprived of a fundamental

right, the court's role is simply to determine if the particular legislative classification is rationally designed to further a legitimate purpose. *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 96.

As the court pointed out in *People v. Perine* (1980), 82 Ill. App. 3d 610, 615, "[t]he equal protection clause does not mean that a State may not draw lines that treat one class of individuals or entities different from one another; the test is whether the difference in treatment is an invidious discrimination."

There is a presumption in favor of the validity of the classification made by the legislative body, and one who assails it has the burden of proving the classification to be arbitrary. *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421.

We are of the opinion that the defendant has failed to establish that the legislative classification is irrational, or that any discrimination is invidious. The scheme which permits certain licensed health care professionals to use the material only for purposes sanctioned is certainly rational and not contrary to any public policy. We do not believe that the defendant has proved any invidious discrimination since he cannot show he is licensed in one of the fields exempted.

The defendant next contends that the motions to suppress should have been granted. First, he argues that the police entry into defendant's home through use of a ruse rendered his consent to search involuntary. Here the police told him that they were investigating his complaint arising out of the letter to him which had, in fact, been initiated by the police.

We reject this argument because it is clear the officers were admitted to the house by the defendant's mother and not by the defendant. They merely told the mother that they wished to talk to "Dave." We reject defendant's argument that the circumstances surrounding the consents in this case were implicitly coercive.

The defendant argues that a warrant should have been obtained before the contents of the envelopes were examined. Two groups of materials tendered to the police by defendant were contained in envelopes. The defendant, citing *Walter v. United States* (1980), 447 U.S. 649, 65 L. Ed. 2d 410, 100 S. Ct. 2395, argues that a warrant should have been obtained before the police examined the contents of the envelopes.

We do not read *Walter* as broadly as the defendant. The *Walter* case involved obscene materials which were misdelivered to the wrong party, who turned them over to the police. *Walter* is distinguishable in that that case involved a private search, while the case at hand involves a consensual search. As pointed out in the

*Walter* case, a search cannot exceed the scope of the authorization. In handing over the envelopes the defendant consented to the search of them.

The defendant next contends that the oral and written statements taken from the defendant were tainted by the prior illegal search and seizure and, as such, must be suppressed. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

We reject defendant's argument here because we have determined that the search was conducted pursuant to defendant's voluntary consent.

Next, the defendant contends that the evidence taken from the defendant's home should be suppressed because the police engaged in outrageous conduct, citing *People v. Kaludis* (1986), 146 Ill. App. 3d 888, and *People ex rel. Difanis v. Boston* (1981), 92 Ill. App. 3d 962.

Defendant argues that the police conducted a type of "sting" operation "which is so outrageous that due process principles absolutely bar the government from invoking the judicial process to obtain conviction." *United States v. Russell* (1973), 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637.

■ Initially, we are of the opinion the police conduct herein was not "outrageous" as that term is used in the cases. *People ex rel. Difanis v. Boston* (1981), 92 Ill. App. 3d 962.

In *People v. Kaludis* (1986), 146 Ill. App. 3d 888, the court pointed out that "[t]he basis of a claim that a law-enforcement agent's conduct with respect to the defendant was so outrageous that it violated due process is that the conduct complained of must somehow, at the very least, assist the defendant in committing the crime and, thus, entrap him." 146 Ill. App. 3d at 897.

The police conduct here did not aid the defendant in committing the crime of child pornography. We, therefore, reject this argument.

■ Lastly, the defendant contends that he was not proved guilty beyond a reasonable doubt. The thrust of this argument is that defendant did not possess the requisite mental state to commit the offense of child pornography. He does not deny that on January 6, 1987, he had such materials under his control. He alleges, however, that the offending materials were obtained between 1976 and 1978 and he did not obtain any such materials after that date. He points out the statute did not take effect until 1985. He argues that it is entirely possible that before the effective date of the statute he forgot he possessed the material and, thus, lacked the requisite mental state to commit the offense.

We think the defendant demonstrated his knowledge of the

nature of the offending materials when he produced them in response to the police inquiries. There is no evidentiary basis to conclude that defendant "forgot" about them. We are of the opinion that the defendant was proved guilty beyond a reasonable doubt.

The judgment and sentence of the circuit court of McHenry County are affirmed.

Affirmed.

DUNN and REINHARD, JJ., concur.