835 A.2d 1208

**Roger BROWN**

**v.**

**STATE of Maryland.**

**No. 140, Sept. Term, 2002.**

Court of Appeals of Maryland.

Nov. 19, 2003.

Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, Geraldine K. Sweeney, Asst. Public Defender, on brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

WILNER, J.

Based largely on evidence found by police officers in his motel room, appellant was convicted in the Circuit Court for Harford County of possession with intent to distribute cocaine and sentenced to prison for ten years, all but five years suspended. His sole complaint in this appeal is that his consent to allow the police officers to enter and search the motel room was involuntary and that, as a result, the contraband they discovered should have been suppressed as evidence. We find no merit in that complaint and shall affirm.

## BACKGROUND

With two exceptions, one of which appellant claims is critical, this case mirrors what occurred in *Scott v. State*, 366 Md. 121, 782 A.2d 862 (2001). We dealt there, for the first time, with a police technique known as "knock and talk." That technique, we noted, had become a popular one with police agencies, particularly in drug enforcement activities. We described the procedure as follows:

> "[P]olice officers, lacking a warrant or other legal justification for entering or searching a dwelling place, approach the dwelling, knock on the door, identify themselves as law enforcement officers, request entry in order to ask questions concerning unlawful activity in the area, and, upon entry, eventually ask permission to search the premises. Permission is often given, and, if the police then find contraband or other evidence of illegal activity, the issue is raised of whether the procedure has in some way contravened the occupant's Fourth Amendment rights."

*Id.* at 129, 782 A.2d at 867.

We made three holdings in *Scott*. The knock on the motel door in that case occurred at night—around 11:37 p.m. That is one of the distinctions between *Scott* and this case. Scott argued that the very act of the police knocking on one's door late at night, without probable cause or even reasonable articulable suspicion, constitutes a "seizure" within the meaning of the Fourth Amendment. Based on the Supreme

Court's declaration in *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991) that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions," and our own conclusion in *Ferris v. State,* 355 Md. 356, 374–75, 735 A.2d 491, 500–01 (1999) that "[t]his is so even if the police lack any suspicion, reasonable or otherwise, that an individual has committed a crime or is involved in criminal activity," and in conformance with the view of most of the courts that had addressed the "knock and talk" issue in the context of the Fourth Amendment, we rejected that claim and held that a nighttime "knock and talk" does not constitute a seizure.

Scott also contended that, even if a "knock and talk" operation does not constitute a seizure, it necessarily vitiates any actual consent given to enter and search the room, at least in the absence of affirmative advice by the police that the occupant may refuse entry, may refuse consent to a search, and may terminate any consent that is given at any time. Consistently with the prevailing view of other courts that had addressed the issue in the context of the Fourth Amendment, we rejected that argument as well. Our second holding was that the proper test for determining the validity of any consent given to enter and search was that stated by the Supreme Court in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and later confirmed in *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996):

> "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, *and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.*"

*Scott v. State,* at 141–42, 782 A.2d at 874, quoting from *Schneckloth v. Bustamonte,* 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875 (emphasis added in *Scott* ).

Finally, applying the *Schneckloth* test to the facts in *Scott,* we affirmed the trial court's ruling that the consent given was valid.

In this case, Maryland State Trooper George Wooden, who had been assigned to work with a Drug Enforcement Administration interdiction group, received anonymous information on January 31, 2001, about possible drug activity in Room 109 at the Super Eight Motel in Aberdeen. There is no claim by the State that the quality or quantity of that information rose to the level of probable cause or even reasonable articulable suspicion. At around 10:00 that morning, accompanied by two other officers, Wooden went to the motel and knocked on the door to Room 109. When appellant, one of the two occupants of the room, asked who was there, Wooden responded "maintenance" and asked to come in to check the thermostat. Appellant opened the door. As soon as the door was opened, Wooden, who was in plain clothes, displayed his police badge, identified himself as a police officer, and asked if he could come in and talk with appellant. Wooden also said that, upon the opening of the door, he detected the odor of burnt marijuana, but he did not enter the room based on that information. Appellant orally agreed to let Wooden in and backed away from the door in order to allow Wooden and one of his colleagues to enter. The third officer remained outside.

As Wooden entered, the smell of marijuana became stronger. The second occupant was in one of the two beds in the room, and appellant proceeded to lie down on the other one. Wooden observed a burnt marijuana cigarette sitting in an ashtray on the night table between the two beds. Appellant grabbed the cigarette and put it in his mouth, as if to swallow it. Wooden said that he had already seen the cigarette, whereupon appellant took it out of his mouth and placed it back in the ashtray. When appellant acknowledged that he had rented the room, Wooden asked if the officers could

search the room and, according to Wooden, appellant consented. Wooden said that appellant was cooperative and that no force or coercion was used. Under a shirt lying on the dresser, Wooden found a digital scale with white powder on it, and in a dresser drawer he discovered a cache of cocaine. In the night table the police found $926 in cash. Upon discovery of the cocaine, appellant and his roommate were placed under arrest.

This information came out at a hearing on appellant's motion to suppress the evidence found in the motel room. Appellant also testified at that hearing. He acknowledged that Wooden had identified himself as a police officer before asking permission to enter, but appellant expressed the belief that he had no right to prevent the officers from entering, so, to avoid a confrontation, he backed away from the door. He said that he felt "apprehended" once Wooden observed the marijuana cigarette in the ashtray, which was after he had entered the room.

The suppression hearing occurred in September, 2001, before our opinion in *Scott* was filed. Nonetheless, declaring the testimony of Trooper Wooden to be more credible than that of appellant, the court found that there was "an express consent to enter, an express consent to search" and, on that basis, denied the motion to suppress.

Appellant does not ask us to overrule *Scott*. He focuses, instead, on the deception employed by Trooper Wooden that induced him to open the door, and, borrowing language from *Perkins v. State*, 83 Md.App. 341, 350, 574 A.2d 356, 360 (1990), argues that "[t]he use of deception to obtain the opening of a door erodes the consensual quality of that opening."

## DISCUSSION

As appellant relies heavily on *Perkins*, we shall begin, and end, with that case. Around 1:00 in the morning, Perkins and a number of friends checked into a motel. The desk clerk apparently called the police, and, when an officer responded,

she said that she thought that Perkins might be "wanted," because another officer had been inquiring about him a few days earlier.[1] A computer check revealed no outstanding warrants. Concerned that there might be a recently issued warrant not yet in the computer, however, the officer decided to investigate. He obtained a passkey for the room and, at about 2:30 a.m., went to the room with another officer. They listened at the door for a few minutes and heard only two males talking quietly. The officer banged on the door with his metal flashlight, and, when someone inside asked who was present, he announced "Howard County Police, open the door." The Court of Special Appeals quite correctly viewed that as a command, not a request, and in response to that command, Perkins opened the door.

There was some disagreement as what occurred next. Perkins said that, when he opened the door, the officer asked for identification and that, when he turned to get it, the officer walked into the room, uninvited. The officer's police report corroborated that statement—"[a] black male opened the door and this officer entered telling the subject he was there to investigate a noise complaint." The officer's testimony was different. He acknowledged telling Perkins that he was there to investigate a noise complaint but said that he merely asked if he could enter and that Perkins consented. The inconsistent statement in the initial report, coupled with the fact that the officer had obtained a passkey, led the Court of Special Appeals to question the officer's testimony that any consent had been requested, but, when added to the affirmative misstatement about wanting to discuss a non-existent noise complaint, the court concluded that, if consent had been given, it was not knowing and voluntary. Noting cases holding that a warrantless doorway *arrest* was invalid when the police used deception to cause the arrestee to open the door, the court held that, "[b]y parity of reasoning, the use of deception *to*

---

1. It appears that the clerk had been told by another clerk that Perkins was wanted and to call the police if he appeared. *See* appellant's brief filed in S.T.1989, No. 1541, at 2.

*obtain entry* into a residence following the opening of a door would also erode the consensual quality of that entry." *Id.* at 350, 574 A.2d at 360 (emphasis added).

■ The correctness of the decision in *Perkins* is not before us. We would concur, however, with the notion that, if the police, lacking any lawful basis to enter a residence without consent, obtain consent to enter based on a material deception or misrepresentation, that may, indeed, "erode the consensual quality of that entry." It does not, of itself, preclude a finding that the consent is valid, but simply is a factor, albeit an important one, that must be considered in determining the reality and voluntariness of the consent. The ultimate test remains that enunciated in *Schneckloth* and confirmed in *Ohio v. Robinette*—the totality of the circumstances.

■ Appellant seems to believe that the use of deception or ruses by the police to obtain access to a residential area is something new, startling, and untested. That is not the case. The Supreme Court has long and consistently recognized that deception is a proper tool in crime detection, and that its use to obtain entry into Fourth Amendment-protected areas for the purpose of observation does not necessarily contravene any Fourth Amendment rights. In *Sorrells v. United States,* 287 U.S. 435, 441–42, 53 S.Ct. 210, 212, 77 L.Ed. 413, 416–17 (1932), the Court held that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises" and that "[t]he appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law."

In *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), *rehearing denied,* 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967), the Court, in an Opinion by Chief Justice Warren, found no Fourth Amendment violation in an undercover agent gaining entry into defendant's home by misrepresenting himself as a drug buyer and actually making

a controlled purchase of drugs. Citing *Sorrells,* the Court recognized that, "in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." *Id.* 385 U.S. at 208–09, 87 S.Ct. at 426, 17 L.Ed.2d at 315. *See United States v. White,* 401 U.S. 745, 749–50, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453, 457 (1971), *rehearing denied,* 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971) (confirming holding of *Lewis* that no warrant is required when Government sends to defendant's home a secret agent who conceals his identity and makes purchase of narcotics from accused). *Compare Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (finding mere acquiescence, rather than consent, where the police gained entry by announcing that they had a search warrant).

Most of the Federal and State courts that have addressed the issue in the context of the Fourth Amendment have refused to suppress evidence seen in plain view or discovered pursuant to a consensual search after officers gained entry into motel rooms or other residential areas by various modes of deception—pretending to be persons other than police officers or concealing their purpose. *See United States v. Glassel,* 488 F.2d 143, 145 (9th Cir.1973), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974):

> "[A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity ... If he is invited inside ... he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, but he may seize anything in plain view."

*See also United States v. Wright,* 641 F.2d 602 (8th Cir.1981), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981) (no Fourth Amendment violation in undercover officers knocking on motel room door, pretending to seek assistance in fixing car trouble, seeing suspected contraband when door was opened, and obtaining warrant based on that observation); *United States v. Garcia,* 997 F.2d 1273 (9th Cir.1993); *United States v. Raines,* 536 F.2d 796 (8th Cir.1976), *cert. denied,* 429

U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. Bullock*, 590 F.2d 117 (5th Cir.1979); *United States v. Guidry*, 534 F.2d 1220 (6th Cir.1976); *United States v. Ressler*, 536 F.2d 208 (7th Cir.1976); *United States v. Scherer*, 673 F.2d 176 (7th Cir.1982), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982); *United States v. Miglietta*, 507 F.Supp. 353 (M.D.Fla.1980); *Guidry v. State*, 671 P.2d 1277 (Alaska 1983); *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982); *People v. Ewen*, 194 Ill.App.3d 404, 141 Ill.Dec. 433, 551 N.E.2d 426 (1990), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990); *State v. McCommons*, 398 So.2d 1100 (La.1981); *State v. Carey*, 417 A.2d 979 (Me.1980); *People v. Catania*, 427 Mich. 447, 398 N.W.2d 343 (1986); *People v. Taormina*, 130 Mich.App. 73, 343 N.W.2d 236 (1983); *State v. Anglada*, 144 N.J.Super. 358, 365 A.2d 720 (1976); *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *State v. Hastings*, 119 Wash.2d 229, 830 P.2d 658 (1992). *See*, in general, *Officer's Ruse to Gain Entry as Affecting Admissibility of Plain–View Evidence—Modern Cases*, 47 A.L.R.4th 425 (1986).

Some State courts have limited the use of deception to gain actual entry into areas protected by the Fourth Amendment to those situations in which the police had a previous and reasonable belief that criminal activity was afoot, sometimes invoking their own State law to justify that limitation. *See State v. Ahart*, 324 N.W.2d 317 (Iowa 1982); *State v. Hashman*, 46 Wash.App. 211, 729 P.2d 651 (1986); *State v. Johnson*, 253 Kan. 356, 856 P.2d 134 (1993); *People v. Ramirez*, 193 Misc.2d 181, 747 N.Y.S.2d 711 (Sup.Ct.N.Y.Co.2002). *See also United States v. Montoya*, 760 F.Supp. 37 (E.D.N.Y.1991). Placing that kind of generic limitation or pre-condition on the use of deception may or may not be good public policy, but it is inconsistent with the holding in *Schneckloth* that the validity, under the Fourth Amendment, of a search or seizure based on consent is to be determined by looking at all of the circumstances bearing on the consent. Indeed, the Washington Supreme Court later disavowed the ruling of the intermediate

appellate court in *Hashman* as "an unnecessary limitation on undercover police investigations" and as "serv[ing] no valid purpose." *State v. Hastings, supra,* 830 P.2d at 660.

As we indicated, we think that the Court of Special Appeals was correct in *Perkins* in noting that, when deception or ruse directly induces consent for the police to enter an area in which the defendant has a reasonable expectation of privacy, the "quality" of that consent may be regarded as "eroded"— not necessarily destroyed or eliminated, but eroded. That is not an issue here, however. The principal, and decisive, distinction between this case and *Perkins* lies in the fact that the deception practiced by Trooper Wooden in this case— representing himself as a maintenance person desirous of checking the thermostat—induced nothing more than the opening of the door. Appellant concededly knew before he allowed Wooden and his colleague to enter that they were police officers. Wooden asked for permission to enter and talk; after having identified himself prior to entry, he never misrepresented his purpose for requesting permission to enter. The entry that led to the observation in plain view of the marijuana cigarette and, upon appellant's ensuing consent, discovery of the scale, the cocaine, and the cash was not induced by deception, either as to Wooden's identity or purpose. The earlier deception that induced appellant to open the door had no erosive effect on the consent to enter or the consent to search.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

RAKER, J., concurs.

BELL, C.J. and ELDRIDGE, J., dissent.

RAKER, J., Concurring.

*Scott v. State,* 366 Md. 121, 782 A.2d 862 (2001), a 4–3 decision, blessed the police technique of "knock and talk." I dissented in *Scott,* and but for the principle of *stare decisis,* I would dissent and urge the Court to overrule that case. *Scott*

is nonetheless the controlling law in this State, and thus, based on *Scott,* I join the opinion of the Court. Continuing to dissent would serve no valid purpose.

Dissenting Opinion by BELL, C.J.

In this case, the police, without probable cause or even reasonable articulable suspicion, approached the petitioner's motel room and, using deception, was able to get him to open the door. Immediately thereafter, they identified themselves and requested permission to enter and talk to the petitioner, why or about what, he was not told, and, the trial court found, the petitioner consented. The petitioner challenges the finding of consent, contending that it was not voluntarily given. Rejecting that challenge, the majority holds that "[t]he earlier deception that induced appellant to open the door had no erosive effect on the consent to enter or the consent to search." 378 Md. 355, 365, 835 A.2d 1208, 1213 (2003). I do not agree. This holding broadens an already suspect policy of "knock and talk," *see Scott v. State,* 366 Md. 121, 782 A.2d 862 (2001), to the point where a police officer, at his or her own discretion, is allowed to circumvent, without a warrant, probable cause or even a reasonable articulable suspicion, the expectation of privacy in his or her residence [1] that an individual is guaranteed by the Fourth Amendment. This gives too much discretion to police officers and, more important, invites its selective, vague and disproportional misuse, to the detriment of the citizens of Maryland. I dissent.

## I.

There was no deception in *Scott.* Under the "knock and talk" technique this Court endorsed in *Scott,* police officers,

---

1. It is well settled that a motel room can be protected against unreasonable search and seizure as much as a home or an office. *Williams v. State,* 372 Md. 386, 402, 813 A.2d 231, 240 (2002). This is because, for the period of its use and occupancy, a hotel or motel room is, for Fourth Amendment purposes, the equivalent of the occupant's home. *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, (1951). *See Lustig v. United States,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949).

having no basis for suspecting that criminal activity is occurring, are permitted to "approach the dwelling, knock on the door, identify themselves as law enforcement officers, request entry in order to ask questions concerning unlawful activity in the area and, upon entry, eventually ask permission to search the premises." 366 Md. at 129, 782 A.2d at 867. Affirming the denial of the defendant's motion to suppress evidence seized in that case by use of the technique, the majority held that there was no seizure-that a police officer merely approaches someone and asks a few questions does not a seizure make, *id.* at 138, 782 A.2d at 872, citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991) and *Ferris v. State,* 355 Md. 356, 374–75, 735 A.2d 491, 500–01 (1999), and that actual consent could be found to have been given even when the defendant is not advised of the right to refuse entry. *Id.* at 141, 782 A.2d at 874. Thus, at all times, the defendant in *Scott* knew with whom he was dealing. Not to denigrate the notion that a seizure could have, and did occur, under the circumstances in *Scott,*[2] but it is clear that there is a significant difference between knowing from the beginning of an encounter that the police are involved and having that fact sprung upon you in the middle of the encounter, there is a difference—and it makes the latter scenario much worse than the former—between knowingly deciding to open the door for the police and opening the door believing

---

**2.** The "knock and talk" encounter in *Scott v. State,* 366 Md. 121, 782 A.2d 862 (2001), occurred late at night and was preceded by the police not only knocking, but pounding on the defendant's door. *Id.* at 126 n. 1, 782 A.2d at 865 n. 1. Therefore, I believed then, and believe now, what Judge Raker wrote in dissent:

"I do not believe that a reasonable person in the shoes of appellant, given the place, time, and circumstances of the encounter, would terminate the encounter at the door and feel free to decline the officers' request to search his motel room. There was no probable cause or reasonable suspicion to support any seizure and, therefore, the seizure was unlawful. Given that the initial seizure of appellant's person by the police was unlawful, in order for any consent given by appellant to be voluntary, rather than a mere acquiescence to a show of authority, such consent would be valid only if the court found it to be sufficiently purged of the primary taint of the illegal seizure." *Id.* at 147, 782 A.2d at 877–78.

that the person asking for entry is a maintenance man. That difference is not simply worthy of note, but it is critical and worthy of being given some, perhaps dispositive, weight.

The case upon which the petitioner relies, *Perkins v. State,* 83 Md.App. 341, 350, 574 A.2d 356, 360 (1990), is like *Scott* in one respect and like this case in another. Like *Scott,* deception was not used by the police, during this early morning encounter, to obtain the opening of the defendant's motel room door; the police identified themselves as "police," even as they "pounded" on the door. *Id.* at 348, 574 A.2d at 359–360.[3] *Perkins* is like the present case in that the police used deception, albeit to enter the room, the door having already been opened. The officer testified that he told the defendant that he was there to investigate a noise complaint, although there had not been one, and asked to come in to talk about it, to which, the court found, the defendant consented. The Court of Special Appeals noted the skepticism to which that use of deception gave rise: "If consent to entry was obtained pursuant to a deliberate misstatement, it does call into question the knowing and voluntary quality of the consent." *Id.* at 349–50, 574 A.2d at 360, citing *Smith v. State,* 72 Md.App. 450, 466–467, 531 A.2d 302 (1987), dealing with the related subject of warrantless doorway arrests. Noting that, in those cases, "[t]he use of deception to obtain the opening of a door erodes the consensual quality of that opening," the intermediate appellate court concluded: "By parity of reasoning, the use of deception to obtain entry into a residence following the open-

---

**3.** The encounter occurred at 2:30 A.M. and was initiated by the police rapping on the defendant's motel room door "not with his knuckles but with a metal flashlight." *Perkins v. State,* 83 Md.App. 341, 348, 574 A.2d 356, 359–360 (1990). As to the latter fact, the intermediate appellate court commented, appropriately, I think, "There is at least a flavor of peremptoriness in the choice of instrumentality." *Id.* at 348, 574 A.2d at 359.

That was confirmed by what followed: "When a male voice from the inside inquired, 'Who is it?,' the response was, according to the consensus recollection ... 'Howard County Police, open the door.'" *Id.* at 348, 574 A.2d at 359–360.

ing of a door would also erode the consensual quality of that entry." *Id.* at 350, 574 A.2d at 360.

The Court of Special Appeals reversed the defendant's convictions due to the Fourth Amendment violations. Its reasoning is instructive as to the proper disposition of the case *sub judice.* Of course, it started with the proposition that the State has the burden of proof as to the voluntariness of the consent, to establish that it was "freely and voluntarily" given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968). *See Hof v. State,* 337 Md. 581, 655 A.2d 370 (1995). Applying the *Schneckloth* test, "examining all the surrounding circumstances to determine if in fact the consent to search was coerced," 412 U.S. at 229, 93 S.Ct. at 2048, 36 L.Ed.2d at 864, the court was sensitive to the fact, and clear, that "[t]o approve [consent] searches without the most careful scrutiny would sanction the possibility of official coercion," *Perkins,* 83 Md.App. at 345, 574 A.2d. at 358, and that "[i]n assessing voluntariness, it is necessary to be alert not only to heavy-handed and overtly coercive investigative techniques but also to 'subtly coercive police questions' and to 'the possibly vulnerable subjective state of the person who consented.'" *Id.* at 345, 574 A.2d. at 358, quoting *Schneckloth,* 412 U.S. at 229, 93 S.Ct. at 2048, 36 L.Ed.2d at 864. Finally, while extending "great deference to the fact finding of the suppression hearing judge with respect to determining the credibilities of contradicting witnesses and to weighing and determining first-level facts," it made its "own independent, reflective constitutional judgment" with respect to the ultimate, conclusionary fact of whether the act of consent was truly voluntary. *Id.* at 345, 574 A.2d at 359. This is consistent with our cases. *See White v. State,* 374 Md. 232, 241, 821 A.2d, 459, 464 (2003); *Carter v. State,* 367 Md. 447, 457, 788 A.2d 646, 651 (2002); *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420, 429 (2001); *Stokes v. State,* 362 Md. 407, 414, 765 A.2d 612, 615 (2001); *In re Tariq A–R–Y,* 347 Md. 484, 489, 701 A.2d 691, 693 (1997); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239, 1240–1241 (1990).

In determining the question of the voluntariness of the defendant's consent, the intermediate appellate court considered all of the surrounding circumstances. These included how the police came to focus on the defendant, *id.* at 347–48, 574 A.2d at 359, the nature and circumstances of the initial approach, *id.* at 348, 574 A.2d at 359–360, and how the initial encounter developed and expanded. Of interest in that regard is the court's consideration of the rationality of the reason for the initial approach, its focus on the officers' preparation for the encounter—getting a passkey, perhaps just in case, *id.* at 348, 574 A.2d at 359—and its continuing concern about the rationality of what occurred following the defendant's opening of the door. *Id.* at 348–49, 574 A.2d at 360. Thus, although the court drew a sharp distinction between the opening of the door and the entry into the room, *see id.* at 349, 574 A.2d at 360, it never lost sight of the need to consider all of the circumstances as a whole, rather than just some in isolation.

Although aware of the decision of the Court of Special Appeals in *Perkins* and its admonishment that,

"The use of deception to obtain the opening of a door erodes the consensual quality of that opening. By parity of reasoning, the use of deception to obtain entry into a residence following the opening of a door would also erode the consensual quality of that entry[,]"

83 Md.App. at 350, 574 A.2d at 360, the majority merely observes that that decision, the correctness of which is not at issue in this case, pre-dated our opinion in *Scott* and, in any case, it is not inconsistent with [the] conclusion in this case that the search was lawful. 378 Md. at 361–62, 835 A.2d at 1211–12. The latter conclusion is based on parsing, in an unnatural and unrealistic manner, a single event, an unwarranted entry, effected by deception, into two, consisting of (1) the opening of the door, admittedly obtained by use of deception, and (2) the entry into the room, ostensibly the product of the petitioner's consent. The majority purports to apply the totality of the circumstances test, enunciated in *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) and *Schneckloth v. Bustamonte,* 412 U.S. 218, 246, 93 S.Ct. 2041,

2057, 36 L.Ed.2d 854 (1973); in truth, it does nothing more than pay lip service to that test, asserting simply that "[t]he deception practiced by Trooper Wooden in this case—representing himself as a maintenance person desirous of checking the thermostat induced nothing more than the opening of the door." 378 Md. at 365, 835 A.2d at 1213. Reading the majority opinion one gets the impression that the opening of the door and the entry into the petitioner's motel room were two separate and distinct events, that the first, admittedly the product of deception, ended abruptly with the opening of the door, and the second began, as a completely separate matter, immediately thereafter. I do not agree.

It is well settled that " 'a search is a functional, not merely a physical process' . . . [which] begins with the planning of the invasion, and continues 'until the effective appropriation' of the fruits of the search 'for subsequent proof of an offense.' " United States v. Davis, 482 F.2d 893, 896–97 (9th Cir.1973), quoting *Lustig v. United States,* 338 U.S. 74, 78, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819, 1823 (1949). The trooper misrepresented his identity as a part of that process and expressly to advance his, and his fellow officers,' plan to enter the petitioner's residence. Thus, in this case, the deceptive act is an inseparable part of the entire event. Moreover, the quality of the consent of a person who opens his or her door in response to a deceptive representation, in this case, believing the person at the door to be a maintenance person, must be considered; the confusion and surprise that necessarily surrounds the realization that one has been duped can not be disregarded, and that taints, and undermines the voluntariness of what follows. That is particularly the case where, as here, the smell of burning marijuana was apparent to the officers immediately upon the door being opened, a fact that must also have been apparent to the petitioner as well. It is highly unlikely that a person would open the door with such a potent and obvious smell of marijuana present, if he or she knew the person at the door was a police officer. In short, and therefore, the trooper's use of trickery, which first revealed and starkly so—

the smell of the burning marijuana as soon as the door was opened—, can not be confined simply to the opening of the door. The totality of the circumstances, to include the erosive effect of such trickery on the petitioner's consent must be considered. In my view, that cuts against a finding of the consent being voluntary. Thus, I would hold that this situation falls squarely within *Perkins.*

## II.

The majority correctly points out that the "use of deception or ruses by the police to obtain access to a residential area is [not] something new, startling, and untested." 378 Md. at 361–62, 835 A.2d at 1211–12. It notes that "[t]he Supreme Court has long and consistently recognized that deception is a proper tool in crime detection, and that its use to obtain entry into Fourth Amendment-protected areas for the purpose of observation does not necessarily contravene any Fourth Amendment rights." *Id.* at 362–63, 835 A.2d at 1212. Pointing to *Sorrells v. United States,* 287 U.S. 435, 441–42, 53 S.Ct. 210, 212, 77 L.Ed. 413, 416–17 (1932), the majority emphasizes that "[t]he appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law." *Id.* The majority reasons further:

> " '[A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity ... If he is invited inside ... he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose. Once inside the house, he cannot exceed the scope of his invitation by ransacking the house generally, but he may seize anything in plain view.' "

*Id.* at 363, 835 A.2d at 1212, quoting *United States v. Glassel,* 488 F.2d 143, 145 (9th Cir.1973), *cert. denied,* 416 U.S. 941, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

I agree that the use of deception is not a new phenomenon and has been endorsed, even by this Court, *see, e.g. Lewis v. State,* 285 Md. 705, 721–22, 404 A.2d 1073, 1082 (1979); *Kier v. State,* 213 Md. 556, 562, 132 A.2d 494, 498 (1957). I agree as well that where probable cause, or, at least, articulable suspicion exists, it may well be appropriate; it would certainly further the above identified objective. In the case *sub judice,* the officers had no basis whatever—not even an articulable suspicion [4]—for believing that the petitioner, the sanctity of whose motel room the officer sought to invade, was engaged in crime.

"The Fourth Amendment provides that 'the right of the people to be secured in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated.' " *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94, 100 (2001), quoting the Fourth Amendment. Courts have been less tolerant of, or deferential to, governmental discretion when what is at issue is the search of a person's dwelling, noting that "at the very core of Fourth Amendment, 'stands the right of a [person] to retreat into [her] own home and there be free from unreasonable governmental intrusion.' " *Id.,* quoting *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961).

There is a real tension between the use of deception and the Fourth Amendment's provision and this State's comparable provision, Article 26 of the Declaration of Rights,[5] at the core

---

**4.** It is conceded that, although Trooper Wooden received anonymous information about possible drug activity in the petitioner's room, there is no claim by the State that the quality or quantity of that information approached probable cause or even reasonable articulable suspicion.

**5.** Article 26 of the Maryland Declaration of Rights provides:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the

of both of which are the fundamental tenets that a person has a reasonable expectation of privacy in his or her residence and "that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–651 (1980). *See Coolidge v. New Hampshire,* 403 U.S. 443, 474–475, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ("a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show . . . the presence of 'exigent circumstances' "). *See also Dunnuck v. State,* 367 Md. 198, 204–205, 786 A.2d 695, 698–699 (2001); *State v. Bell,* 334 Md. 178, 191, 638 A.2d 107, 114 (1994); *Doering v. State,* 313 Md. 384, 397, 545 A.2d 1281, 1287–1288 (1988). The problem, and a difficult one it is, is defining the limits to be set on the use of police deception, *Commonwealth v. Morrison,* 275 Pa.Super. 454, 418 A.2d 1378, 1386 (1980) (Spaeth, J. Concurring), striking the proper balance.[6]

---

place, or the person in special, are illegal, and ought not to be granted."

**6.** Because some criminals cannot be caught, or convicted, unless the police are permitted to resort to deception, the question that ultimately must be posed, and answered, is: is the cost to society and the personal liberty rights of its citizens worth it? One answer, in my view, a most appropriate and well considered one, is the following:

"The problem of defining the limits to be set on the use of police deception is one of the most difficult problems of the criminal law. It may well be that certain sorts of criminals cannot be convicted unless the police are permitted to resort to deception. The question is then presented: Is it worth convicting them? For when the police are permitted to resort to deception, there are losses as well as gains. The gains may be considerable-for example, the detection and elimination of a carefully organized traffic in drugs. But the losses may also be considerable. The law of search and seizure is not concerned with protecting the criminal's right of privacy but the honest citizen's right. If we are to be able to enjoy liberty and pursue happiness, we must know what part of our world is real and what part is illusion-that our home is our castle, and not a broadcasting center for hidden police transmission devices; that a repairman is a repairman, a business associate a business associate, and not a police agent. Permit the police to make our world illusion, and no one, neither criminal nor honest citizen, will be free. Thus in every case involving police deception the court must balance the gains and losses incident to permitting the deception. Given the difficulty and importance of

To aid in trying to strike this balance, some courts have routinely required some showing of probable cause or, at the very least, reasonable suspicion, before permitting the police to use deception to breach the sanctity of an individual's residence. *E.g. State v. Ahart*, 324 N.W.2d 317, 319 (Iowa 1982) ("consent given to a warrantless entry to a private home is invalid if the police, absent a show of cause, obtain entry by ruse."); *Kansas v. Johnson*, 253 Kan. 356, 856 P.2d 134, 140 (1993) ("A prerequisite to a valid ruse entry is that officers must have a reasonable suspicion of criminal activity at the residence. If an officer has a justifiable and reasonable basis to suspect criminal activity in a residence, a ruse entry is permissible. This permission is to be construed narrowly."); *People v. Ramirez*, 193 Misc.2d 181, 747 N.Y.S.2d 711, 716 (S.Ct. N.Y.2002) ("It cannot be doubted that the police may not arbitrarily ask a person to open the door of his residence any more than they could ask someone chosen randomly to open up the sealed packages he is carrying on the street in the hope of finding stolen goods. That they could lawfully use a subterfuge to trick him into opening the door of his residence when they did not have an articulable reason to intrude upon his privacy is an even more startling proposition"); *United States v. Tibbs*, 49 F.Supp.2d 47, 52 (D.Mass.1999); *United States v. Montoya*, 760 F.Supp. 37, 39 (E.D.N.Y.1991) ("It seems clear that when the officers do not have at least reasonable suspicion that the occupants are engaged in crime, there can be no justification for resorting to false statements to get into a dwelling"); *United States v. Maldonado Garcia*, 655 F.Supp. 1363, 1367 (D.Puerto Rico 1987) ("Officers cannot use a ruse to gain access unless they have more than mere conjecture that criminal activity is underway. To hold otherwise would be to give police a blanket license to enter homes

---

striking the proper balance, the court should bend every effort to decide each case only on its facts, never going further than it must, and never indulging in broad language that may be misunderstood and so encourage unwholesome practices."
*Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378, 1386–87 (1980) (Spaeth, J. Concurring) (footnote omitted).

randomly in the hope of uncovering incriminating evidence and information.").

In *Ahart,* two officers stopped their car in front of the defendant's home and pretended to have engine problems. One officer knocked on the defendant's door and told the person who opened the door that his car had broken down and that he needed to make a call. The officer was allowed to enter and he pretended to place a call. While using the phone the officer saw marijuana in plain view. Without taking any action on the drugs, the officer returned to the car, got it started, and left the area and, based on the officer's observations, obtained a search warrant. The defendant's motion to suppress the marijuana seized pursuant to the warrant was denied. The Iowa Supreme Court reversed. It explained, 324 N.W.2d at 319,:

> While we recognize that a warrantless entry effected by ruse must often be allowed if the government is to ferret out "those organized criminal activities that are characterized by covert dealings," *Lewis [v. United States],* 385 U.S.[206,] 210–11, 87 S.Ct. [424,] 427, 17 L.Ed.2d [312,] 316 [ (1966) ], we are equally cognizant that the security of one's home against arbitrary intrusion by the police is at the core of the fourth amendment and basic to our society. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 [ (1967) ]; 68 Am.Jur.2d Search and Seizure §§ 2 (1973) and cases therein cited. Consequently, not all warrantless entries gained by ruse are valid. Certainly, such an entry is not allowable if it is arbitrary.

> It is our conclusion that consent given to a warrantless entry to a private home is invalid if the police, absent a show of cause, obtain entry by ruse. As noted previously, this cause may be based on the officer's participation with the consentor in an illegal transaction or it may be grounded on a reasonable belief that criminal activity is afoot. The consent is clearly invalid, however, when there is no reason shown for selecting a particular home to enter. We hold that a search is patently unreasonable as an arbitrary intrusion when it is based upon consent obtained by decep-

tion unless there is a justifiable and reasonable basis for the deception.

In this case, however, we are unable to determine whether the police had any reason whatsoever to believe that criminal activity was afoot in the Ahart home. The officers failed to articulate any cause for the ruse and the record is devoid of any indicia of logical connection between the ruse and legitimate law enforcement. We are forced to conclude that the intrusion was based on mere conjecture or idle curiosity. Police intrusion into a home based on mere conjecture suggests that officers are entering homes randomly in hope of discovering incriminating evidence. The officers' actions violate both the United States and the Iowa Constitutions which have as a purpose the prevention of such unreasonable intrusion. Thus, we hold that the warrantless entry into the Ahart home violates both the fourth amendment to the United States Constitution and article I, section 8, of the Iowa Constitution. Since the subsequent warrant was obtained by the use of this illegal search, the evidence seized as a result of the warranted search must also be suppressed.

More recently, in *Ramirez,* the police gained entry to the defendants' hotel room by identifying themselves as "housekeeping," after knocking on the door. 747 N.Y.S.2d at 712. Rejecting, as not credible, their testimony that they smelled heroin outside the closed door, the court concluded that there was no evidence presented, and therefore the police had no basis, to induce the defendants to open the door of their room under a false representation. *Id.* at 714. The court held that "in every aspect of Fourth Amendment law the police are required to show some predicate before they can intrude upon a person's privacy" and, thus, may not use a "a ruse to gain access unless they have more than mere conjecture that criminal activity is underway." *Id.* at 715.

I agree with these decisions, both the result they reach and the rationale by which they do so. In ruling against the petitioner, this court leaves the citizens of Maryland susceptible to the often selective, vague and disproportionate actions by the police. It sanctions actions that undermine their

expectation of privacy and, indeed, their right to be secure in their home. I would hold, therefore, that when a person opens the door under these circumstances, as a result of a deception practiced by the police, when they have neither probable cause or reasonable suspicion to focus on that person as a wrong-doer, the quality of that person's consent is eroded. The petitioner's convictions ought to be reversed.

Judge ELDRIDGE has authorized me to state that he joins in this dissent.