The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Joseph Patrick CURTIS, Defendant–Appellee.

No. 97SA453.

Supreme Court of Colorado, En Banc.

June 1, 1998.

Jeannie M. Smith, District Attorney, Fourth Judicial District, Lin Billings, Deputy District Attorney, Robert B. Harward, Deputy District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, for Plaintiff–Appellant.

Douglas P. Price, Colorado Springs, for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the El Paso County District Court suppressing evidence of a controlled substance, methamphetamine, and statements made by the defendant, Joseph Curtis (Curtis), at the time of his arrest. A UPS package containing methamphetamine was discovered during an illegal warrantless search of the private residence of the co-defendants. Curtis neither owned nor resided at this residence, and the package was not addressed to him. The district court held that the methamphetamine and the statements must be suppressed because the events leading to Curtis's arrest were part of the same transaction as the illegal entry into the home. We hold that the district court failed to determine whether

Curtis had standing to contest the illegality of the search. Hence, we reverse the ruling of the district court and we remand this case with instructions to the district court to make findings of fact necessary to determine standing.

## I.

In April of 1997, United Postal Service (UPS) workers in California alerted the Drug Enforcement Administration (DEA) to a suspicious package addressed to Gera Martinez in Colorado Springs. DEA agents opened the package and discovered methamphetamine, a controlled substance. The agents repackaged the methamphetamine and, dressed as UPS employees, delivered the package to the Martinez residence. Approximately five minutes later, several agents conducted a warrantless raid of the house, recovered the unopened package, and arrested Gera Martinez and David Tankiewicz, who were present in the home. Martinez and Tankiewicz agreed to cooperate with the DEA agents and informed them that the package was really intended for Curtis.

At the request of the DEA agents, Tankiewicz telephoned Curtis and stated that there was a package for him at the residence. Curtis arrived at the residence and engaged in small talk with Martinez and Tankiewicz, after which he prepared to leave the residence without the package. At this point, the DEA agents emerged, arrested Curtis, and questioned him. Curtis initially denied knowledge of the contents of the package, but eventually admitted that he was aware that the package was coming from California and that it contained methamphetamine. Curtis also claimed ownership of the package. As a result of this incident, Martinez, Tankiewicz, and Curtis were each charged with various offenses.

Martinez moved for suppression of evidence. On September 16, 1997, a district court judge determined that the DEA agents possessed probable cause to enter the home but that no exigent circumstances existed to justify the agents' failure to obtain a warrant. The judge held that the warrantless entry into the home was illegal and suppressed all evidence resulting from this intrusion—including the methamphetamine—as to Martinez.

Curtis also filed a motion for suppression of evidence and statements, which was heard before a different district court judge on December 8, 1997. The parties stipulated to facts in order to facilitate the judge's ruling. Included in the agreed facts was the acceptance by both parties that the DEA agents' entry into the Martinez residence was unlawful.

At the hearing, the prosecutor argued that the defendant had no proprietary or other interest in the residence and therefore lacked standing to contest the illegal search of the residence. The district court made no factual findings as to standing, and held that all evidence discovered as a result of the illegal intrusion must be suppressed because "the attempted transaction with Curtis was the same event. It was an extension of the same event."

At this point the prosecution requested clarification of the ruling, stating that there appeared to be no evidence that Curtis had standing to challenge this issue. Curtis's attorney asserted that Curtis left his girlfriend's house two to three weeks prior to the search, that he did not have a residence at the time of the search; he was a guest in the Martinez residence; he ate lunch at the Martinez residence on a daily basis; he obtained Martinez's permission to receive mail at that residence, and came to the house regularly to check his mail; and that Martinez gave Curtis permission to stay in the house overnight. The district attorney indicated that Tankiewicz and Martinez would testify to the contrary. The district court stated that standing was immaterial to its ruling and that the ruling was not based on any expectation of privacy in the residence. The prosecution then filed this interlocutory appeal.

## II.

The Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution protect against unreasonable searches and seizures. These protections are personal to the person

asserting them. *See People v. Juarez,* 770 P.2d 1286, 1288 (Colo.1989); *People v. Morrison,* 196 Colo. 319, 322, 583 P.2d 924, 926 (1978). Therefore, before a criminal defendant can challenge the constitutional validity of a governmental search, the defendant must demonstrate standing. *See Juarez,* 770 P.2d at 1289; *People v. Naranjo,* 686 P.2d 1343, 1345 (Colo.1984).

 A defendant need not be present at the time of the intrusion to assert standing. *See* 5 Wayne R. LaFave, *Search and Seizure* § 11.3(c), at 145 (3d ed.1996). The defendant must demonstrate "a legitimate expectation of privacy in the areas searched or the items seized." *Id.; see also Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The question is whether the defendant demonstrates a sufficient connection to the areas searched or the items seized based on the totality of the circumstances. *See Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *People v. Whisler,* 724 P.2d 648, 649 (Colo.1986); *People v. Spies,* 200 Colo. 434, 439–40, 615 P.2d 710, 714 (1980).

 A subjective expectation of privacy is legitimate for purposes of the Fourth Amendment only if it is "one that society is prepared to recognize as reasonable." *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring) (holding that the defendant had a reasonable expectation of privacy in a telephone booth); *see also Rakas,* 439 U.S. at 144 n. 12, 99 S.Ct. 421. Thus, one factor the court should consider is whether the defendant has a possessory or proprietary interest in the subject of the search. *See Naranjo,* 686 P.2d at 1345; *People v. Suttles,* 685 P.2d 183, 190 (Colo.1984).

 However, possessory and proprietary interests are not necessarily determinative. A defendant may possess a legitimate expectation of privacy in a home absent a legal interest in the premises and absent legal authority to determine who may or may not enter the household. *See Minnesota v. Olson,* 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). For example, an overnight guest may have a reasonable expecta-

tion of privacy in another person's home. *See id.* at 96–97 & n. 5, 110 S.Ct. 1684; *Mancusi v. DeForte,* 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (holding that an employee had a legitimate expectation of privacy in his office even though the papers seized from the office were not the property of the employee); *United States v. Jeffers,* 342 U.S. 48, 50–51, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (holding that defendant had reasonable expectation of privacy in a hotel room rented by relatives when he had a key to the room and permission to use the room at will). On the other hand, a purely transient guest probably does not have an expectation of privacy in another person's residence. *See, e.g., United States v. McNeal,* 955 F.2d 1067, 1070 (6th Cir.1992).

 Here, the issue presented is the nature of the relationship that Curtis had with the Martinez residence and whether this relationship gave Curtis a legitimate expectation of privacy in the home that would permit him to object to the illegal government intrusion. However, the district court made no factual findings regarding the connection that Curtis had with the home, if any, and did not determine whether Curtis had a legitimate expectation of privacy in the home at the time of the illegal search. Instead, the district court suppressed the evidence in this case because DEA agents' interactions with Curtis were "an extension of the same event" as the illegal search. The fact that illegality occurred and the fact that Curtis was incriminated as a result does not automatically confer standing. As we stated in *People v. Henry,* 631 P.2d 1122, 1129 (Colo.1981):

> Regardless of the degree to which the discovery of these objects ... might implicate the defendant on the pending charges, neither the evidentiary significance of the objects seized nor the nature of the pending charges automatically confers on him the standing necessary to the successful assertion of a Fourth Amendment Claim.

The district court's decision to suppress the evidence in this case because the DEA's interactions with Curtis were "an extension of the same event" as the DEA's illegal entry into the Martinez home is not in accordance

with the standard set by this court's precedents.

 In addition, the district court failed to make findings of fact on the issue of standing. After the court rendered its ruling, the defense attorney stated that Curtis was receiving mail and eating lunch at the residence on a regular basis for several weeks, and that Martinez gave Curtis an open invitation to spend the night at the house. However, these facts came to the court's attention by way of defense counsel's offer of proof as to what Curtis would say if he were to testify. Neither Curtis nor any other witness testified at the suppression hearing regarding Curtis's relationship with the Martinez residence, and the district attorney disputed the accuracy of these statements. Thus, the totality of the circumstances regarding Curtis's relationship with the Martinez residence is unknown. Given this uncertainty, the record in this case does not provide a sufficient basis for appellate review, and this case must be remanded for factual findings. *See People v. D.F.*, 933 P.2d 9, 14 (Colo.1997) (holding that this court will reverse and remand when appellate review of a suppression order is hindered by the absence of factual findings).

III.

We hold that the district court erred by suppressing the methamphetamine and Curtis's statements without addressing the prosecution's argument that Curtis lacked standing to challenge the illegal entry of the Martinez residence. Additional findings of fact are necessary to determine whether Curtis has standing to contest this issue. We therefore reverse the district court's ruling suppressing the methamphetamine seized from the residence and the statements given by Curtis at the time of his arrest. We remand this case to the district court with instructions to conduct a hearing on the issue of standing at which the parties may present evidence, and we direct the district court to determine whether Curtis has standing to contest the DEA agent's illegal intrusion into the Martinez residence.