2012 COA 37

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Harvey NELSON, Defendant–Appellant.**

No. 08CA0775.

Colorado Court of Appeals,
Div. I.

March 15, 2012.

As Modified on Denial of Rehearing
June 7, 2012.

John W. Suthers, Attorney General, Rebecca A. Jones, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 Defendant, Harvey Nelson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of numerous illegal substance-related offenses. His sole contention on appeal is that the trial court erred in denying his motion to suppress evidence based on police officers' allegedly unconstitutional entry and search of his residence. We conclude that the case must be remanded to the trial court for further proceedings.

## I. Background

### A. Evidence

¶ 2 The following evidence was presented at the suppression hearing. On January 27, 2006, police officers went to an apartment building after receiving a tip from an anonymous informant that narcotics distribution was occurring in apartment 114. Officer Andrews spoke to the apartment manager, who informed him that a man who was not named on the lease was residing in the unit and had paid the rent.

¶ 3 Officer Andrews, who was in police uniform, was assisted by Officer Eberhart, who was wearing plain clothes. The officers wanted to conduct a "knock and talk" with the apartment's occupants to gather more information and seek consent to search the apartment. Therefore, they determined that Officer Eberhart would knock on the door, while Officer Andrews stayed out of sight.

¶ 4 Officer Eberhart knocked on the apartment door, waited approximately one minute, and knocked again. A voice from inside asked who it was, and Officer Eberhart responded, "Maintenance." Nelson opened the door and stood "directly in front of" it. Officer Eberhart was able to see another man inside the apartment. At that point, Officer Andrews walked up behind Officer Eberhart, and the other man inside ran toward the back of the apartment. Officer Andrews entered the apartment in pursuit of the man, while Officer Eberhart pulled Nelson to the ground in the doorway to keep him from interfering with Officer Andrews.

¶ 5 Officer Andrews testified that, when Nelson opened the door, he saw a glass pipe commonly used for smoking marijuana on a table inside the apartment. When he noticed the other man running, he assumed that he was fleeing, destroying evidence, or trying to obtain a weapon. Officer Andrews chased him out the back door of the apartment, where the man dropped a knife. The officer then apprehended him, recovered packets of methamphetamine from his pockets, and brought him back inside the apartment.

### B. Factual Findings and Legal Conclusions

¶ 6 The trial court first determined that Nelson had standing to challenge the search of the apartment because he was in the apartment with the written lessee's consent.

¶ 7 The court also determined that the officers' decision to use a ruse to get Nelson to open the door was not improper and did not violate the Fourth Amendment, as the officers "merely used a false statement at the door to have the door opened."

¶ 8 The court next concluded that the warrantless entry into the apartment was constitutional. The court found that the glass pipe was in plain view and gave the officers probable cause to believe evidence of a crime was

inside. The other man's flight toward the back of the apartment and out of Officer Andrews's view amounted to exigent circumstances justifying the entry "to apprehend the suspect and to ensure that no weapon was used, or about to be used, and to preserve the evidence."

## II. Nelson Had Standing to Challenge the Search

¶ 9 Initially, the People contend that Nelson lacked standing to challenge the search because he was not an "overnight guest" and, after the entry and search began, he stated that he did not live there. We disagree.

¶ 10 Before a defendant can challenge the constitutionality of a search, he or she must establish that he or she has standing, which is "a legitimate expectation of privacy in the areas searched or the items seized." *People v. Juarez*, 770 P.2d 1286, 1288–89 (Colo.1989) (quoting *People v. Naranjo*, 686 P.2d 1343, 1345 (Colo.1984)); *see Minnesota v. Olson*, 495 U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (an overnight guest has a reasonable expectation of privacy and thus has standing to challenge a warrantless arrest).

¶ 11 Undisputed facts adduced at the suppression hearing showed that Nelson was living in the apartment. The apartment manager testified that Nelson had provided three months rent for the apartment. Officer Andrews testified that the named lessee told him that her friend and the friend's boyfriend (Nelson) lived there and that he believed Nelson was living there. The lessee testified that she rented the apartment so that her friend could live there with Nelson, and she consented to his living there. *See People v. Curtis*, 959 P.2d 434, 437 (Colo. 1998) (the question in determining standing is "whether the defendant demonstrates a sufficient connection to the areas searched or the items seized based on the totality of the circumstances").

¶ 12 Accordingly, the People's "overnight guest" argument is not supported by the record. Further, we reject the People's argument that, because Nelson said he did not live in the apartment when he was asked to consent to a search, he lost standing to challenge it. The record shows that Nelson was actually living there, despite his later statement. Thus, he had standing to challenge the entry and search.

## III. The Entry into Nelson's Apartment Was Legal

¶ 13 Nelson contends the trial court erred as a matter of law in concluding that the warrantless entry into his apartment did not violate his constitutional rights. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7. We do not agree.

### A. Standard of Review

¶ 14 A ruling on a motion to suppress requires the trial court to make findings of historical fact and apply controlling legal standards to the established facts. *People v. Pate*, 71 P.3d 1005, 1010 (Colo. 2003). "The trial court's findings of historical facts are entitled to deference and will not be overturned if supported by competent evidence in the record." *Id.* However, the appellate court analyzes de novo the trial court's application of legal standards to those facts as a question of law. *People v. Kazmierski*, 25 P.3d 1207, 1210 (Colo.2001).

### B. The "Maintenance" Ruse Was Not Illegal

¶ 15 Nelson asserts that the entry into the apartment was illegal because Officer Eberhart used a ruse by identifying himself as "maintenance" to cause him to open the door. We do not agree.

¶ 16 Courts generally do not condone police deception. However, "the limited use of ruses is supported by the overwhelming weight of authority." *People v. Zamora*, 940 P.2d 939, 942 (Colo.App.1996).

¶ 17 Courts examining police "ruses" generally do so in the context of whether consent to enter or search is constitutionally valid. For example, in *Krause v. Commonwealth*, 206 S.W.3d 922, 926 (Ky.2006), a police officer falsely informed the man who opened the door that he wanted to examine the house in order to determine whether it was the location where a young girl had recently been

raped. The Kentucky Supreme Court concluded that the use of this ruse coerced the consent to enter the home. *Id.; see McCall v. People,* 623 P.2d 397, 403 (Colo.1981) (where a consensual entry into a home "is gained by a preconceived deception as to purpose, consent in the constitutional sense is lacking"), *overruled on other grounds by People v. Davis,* 187 P.3d 562 (Colo.2008).

¶ 18 The difference between a permissible consensual encounter at a person's doorway and an impermissible constructive entry depends on whether there was coercive conduct or a display of force by police officers. *See United States v. Thomas,* 430 F.3d 274, 276–78 (6th Cir.2005). "It is constitutionally permissible for police officers to knock at the entrance to a residence and seek permission to enter for the purpose of inquiry, and, if the occupant validly consents, the officers may enter without a warrant." *People v. Bostic,* 148 P.3d 250, 254 (Colo.App. 2006) (citing *People v. Milton,* 826 P.2d 1282, 1285 (Colo.1992)); *see State v. Brown,* 356 Ark. 460, 156 S.W.3d 722, 727 (2004) (a knock and talk procedure "is not *per se* violative of the Fourth Amendment").

¶ 19 Here, the officers testified that they wished to conduct a knock and talk investigation to seek consent to enter the apartment. The ruse was intended only to get a person inside the apartment to open the door; it was not intended or used to deceive any person into giving consent to enter or search the apartment.

¶ 20 Nelson argues that the "maintenance" ruse violated his Fourth Amendment rights simply because it caused him to open the apartment door. However, courts addressing cases with similar circumstances generally find that a ruse to have someone open the door, in and of itself, is permissible.

¶ 21 For example, in *United States v. Alejandro,* 368 F.3d 130, 137 (2d Cir.2004), the court held that a police officer's use of a ruse—telling the defendant through a closed door that he was a utility company employee who needed to check a gas leak—did not violate the defendant's Fourth Amendment rights. *See United States v. Garcia,* 997 F.2d 1273, 1280 (9th Cir.1993) (officers posed as potential renters of property, spoke to the defendant through the back patio door, and saw a package of cocaine in plain view; court found that neither the officers' status nor the ruse caused the search to violate the Fourth Amendment); *United States v. Leung,* 929 F.2d 1204, 1207–08 (7th Cir.1991) (officers asked hotel housekeeper to knock on door and say she was there to clean room, and the suspect answered the door; ruse did not violate privacy interests, as suspect could have chosen not to answer the door); *United States v. Wright,* 641 F.2d 602, 604 (8th Cir.1981) (finding officers did not conduct unconstitutional search where they knocked on motel room door pretending to seek assistance with car trouble, saw suspected contraband from outside when door was opened, and obtained a search warrant based on that observation); *United States v. Cruz,* 838 F.Supp. 535, 543 (D.Utah 1993) (the use of a ruse to gain entrance is not necessarily improper, but is dependent on the entirety of the circumstances); *Herring v. State,* 279 Ga.App. 162, 630 S.E.2d 776, 778 (2006) (police officer throwing a plastic cup at the door, prompting occupant to open door, thus enabling the officer to see cocaine in plain view on a table inside, did not violate the defendant's rights); *State v. Dixon,* 83 Hawai'i 13, 924 P.2d 181, 191 (1996) (police used a security guard to knock on the defendant's door and claim he needed to check the air conditioning; court held that, where an entry is obtained by a ruse, "there is no unwarranted intrusion on the occupant's privacy because the occupant has voluntarily surrendered his or her privacy by opening the door"); *Adcock v. Commonwealth,* 967 S.W.2d 6, 11 (Ky. 1998) (for purposes of the "knock and announce" rule where officers have a warrant, use of a pizza delivery person ruse was permissible because it enticed the defendant to voluntarily open the door, at which point "the necessity for the ruse evaporated"); *Brown v. State,* 378 Md. 355, 835 A.2d 1208, 1213 (2003) (where officer represented himself as a maintenance person wanting to check the thermostat, which induced nothing more than the opening of the door, the ruse did not invalidate subsequent consent to enter); *see also Wallace v. State,* 933 P.2d 1157, 1165 (Alaska Ct.App.1997) ("courts have routinely

allowed police to employ non-coercive trickery in the course of investigations"). *But see People v. Porter*, 227 Cal.App.2d 211, 38 Cal. Rptr. 621, 622–23 (1964) (finding an unlawful invasion of the security of the defendant's home where the defendant opened the door upon the officers' representation that "Bill" was outside); *see also People v. Reeves*, 61 Cal.2d 268, 38 Cal.Rptr. 1, 391 P.2d 393, 396 (1964); *People v. Miller*, 248 Cal.App.2d 731, 56 Cal.Rptr. 865, 869–70 (1967).

¶ 22 We do not consider persuasive the cases Nelson cites in support of his argument. In *People v. Jefferson*, 43 A.D.2d 112, 350 N.Y.S.2d 3, 4 (1973), officers knocked on an apartment door and identified themselves as *police officers* investigating a gas leak. An occupant opened the door and the officers saw a bag of marijuana from the doorway. The officers then entered the apartment and arrested the occupants. The court found that the ruse used by the officers to gain access to the apartment and subsequently search and arrest the occupants violated the defendant's constitutional rights. Thus, the ruse was considered impermissible because it was used to enter the premises.

¶ 23 In *People v. Atkinson*, 116 Misc.2d 711, 456 N.Y.S.2d 328 (N.Y.Sup.Ct.1982), officers armed with an arrest warrant approached an apartment and knocked on the door. When an occupant asked who was there, the officer responded, "Open the door. It's the management." *Id.* at 329–30. The officers entered the room and arrested the suspect. The defendant moved toward his bedroom, where an officer found a firearm. *Id.* at 330. The court concluded that the initial entry into the apartment was improper because no exigent circumstances or consent existed.

¶ 24 In contrast, here, the entry into Nelson's apartment was not the direct result of the ruse used to have an occupant open the door. As we discuss below, Officer Andrews's entry into the apartment was justified by probable cause and exigent circumstances. The officers testified that the only intent behind the use of the "maintenance"

ruse was to cause a person to open the door so they could conduct a "knock and talk" investigation. Nelson presented no contrary evidence of the officers' intent. Nelson could have simply chosen not to answer the knock or open the door.[1]

¶ 25 In our view, the better-reasoned authority supports the officers' action here. Therefore, we conclude the use of the "maintenance" ruse did not violate Nelson's Fourth Amendment rights.

## C. The Entry Was Constitutionally Valid

¶ 26 The warrantless entry into a person's home to conduct a search is presumptively unreasonable unless both probable cause and exigent circumstances exist. *People v. Mendoza–Balderama*, 981 P.2d 150, 156 (Colo.1999) (citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Because warrantless searches are presumptively unreasonable, the prosecution has the burden of establishing that such a search is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement. *People v. Winpigler*, 8 P.3d 439, 443 (Colo.1999).

### 1. Probable Cause

¶ 27 "In the case of a search, probable cause requires the police to establish that reasonable grounds existed to believe that contraband or evidence of criminal activity was located in the area to be searched." *Id.* at 444–45. The totality of circumstances known to the police at the time of a warrantless entry must be examined in determining the existence of probable cause. *Id.*

¶ 28 Initially, we note Nelson's challenge to Officer Andrews's credibility. The trial court, however, evaluated all the evidence in making its determination, and we do not perceive the officer's testimony to be incredible as a matter of law. *See People v. Plancarte*, 232 P.3d 186, 192 (Colo.App.2009) (fact finder determines the credibility of witnesses, and "testimony that is merely biased,

---

1. Nelson did not present any evidence or argument based on landlord-tenant law regarding the right of a landlord or a maintenance person acting on behalf of a landlord to enter the premises at issue.

conflicting, or inconsistent is not incredible as a matter of law").

¶ 29 Here, the officers knew from a reliable anonymous informant that narcotics distribution was possibly taking place at the apartment and that a large quantity of methamphetamine was reportedly inside. The informant stated that the person selling the narcotics was a Hispanic man named "Raul," who had recently been released from federal prison.

¶ 30 When Nelson opened the apartment door, Officer Andrews saw a glass pipe he recognized through his training and experience as a device commonly used to smoke marijuana. *See* § 18–18–426(1)(g)(I), C.R.S. 2011 (drug paraphernalia includes, as relevant here, glass pipes intended for use in inhaling marijuana); § 18–18–428, C.R.S. 2011 (possession of drug paraphernalia is a class two petty offense punishable by a fine of no more than $100). The trial court determined that the sight of the pipe, lying in plain view, established probable cause for the entry.

¶ 31 We conclude that the glass pipe in plain view, in combination with the information the officers already had obtained from the reliable informant regarding drug activity in the apartment, and the other man apparently fleeing from the apartment, sufficiently established probable cause that contraband and evidence of criminal activity were inside the apartment. *See People v. Revoal*, 2012 CO 8, ¶ 18, 269 P.3d 1238, 1242 ("flight from police may support an informant's claim that an individual is engaged in drug trafficking"). We reject Nelson's arguments regarding the possible legal uses of the glass pipe, and further conclude that the court was not required to evaluate whether the pipe was drug paraphernalia under section 18–18–427, C.R.S. 2011. *See Mendez v. People*, 986 P.2d 275, 281 n. 4 (Colo.1999) ("[T]he Constitution has never required an officer to refrain from searching premises under circumstances in which the activity in question could potentially be legal."); *see also* § 18–18–426(1)(g)(I) (a glass pipe is included in the definition of drug paraphernalia).

### 2. The Officer Safety Exception Justified the Warrantless Entry

¶ 32 The trial court determined that the apparent flight of the other man in the apartment created an exigent circumstance justifying Officer Andrews's intrusion into the apartment "to apprehend the suspect and to ensure that no weapon was used, or about to be used, and to preserve the evidence." We agree with the trial court.

¶ 33 "When the police seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency existed to justify the warrantless entry and search." *Mendoza–Balderama*, 981 P.2d at 156. "Exigent circumstances may exist when (1) the police are engaged in a bona fide pursuit of a fleeing suspect; (2) there is a risk of immediate destruction of evidence; or (3) there is a colorable claim of emergency threatening the life or safety of another." *Id.* at 157; *see also People v. Jansen*, 713 P.2d 907, 911 (Colo.1986).

¶ 34 An additional exigency that does not precisely fit within these three categories allows officers to make a warrantless arrest or conduct a warrantless search if they believe that their own lives or the lives of others are at risk. *People v. Aarness*, 150 P.3d 1271, 1278–79 (Colo.2006) (citing *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)); *People v. Brunsting*, 224 P.3d 259, 264 (Colo.App.2009) (*cert. granted* Feb. 16, 2010).

¶ 35 Here, when the officers approached the apartment, they had information that a man living there had recently been released from federal prison and was selling a large volume of methamphetamine. Officer Andrews testified that, when the man inside the apartment began to run, he pursued him because he believed he was "either trying to flee, obtain a weapon, or destroy evidence." The officers had a legitimate safety concern because people involved in drug distribution often possess firearms. *See People v. Hughes*, 767 P.2d 1201, 1205 (Colo.1989) (firearms are often tools of the trade for those involved in drug distribution) (citing

*United States v. Trullo,* 809 F.2d 108 (1st Cir.1987)).

¶ 36 Thus, we agree with the trial court that officer safety was an exigent circumstance under the circumstances here. *Cf. Aarness,* 150 P.3d at 1278 (finding exigent circumstances where the police, among other things, had information that the defendant was armed).

¶ 37 Therefore, we conclude that the trial court properly determined that the warrantless entry into the apartment was justified by probable cause and exigent circumstances.

### IV. Consent of Girlfriend and Lessee Were Ineffective

¶ 38 Nelson contends that, even if the initial entry into the apartment was constitutional, his girlfriend's subsequent consent to search was invalid as to him. We agree.

¶ 39 "[A] warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph,* 547 U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006); *see People v. Miller,* 143 P.3d 1195, 1196 (Colo.App.2006).

¶ 40 The People rely, as did the trial court, on the fact that, when asked to consent to a search, Nelson responded that he did not live there. However, the evidence at the hearing established that Officer Andrews was aware that the lessee's friend and her boyfriend were living there, and he stated he believed Nelson lived there. The apartment manager had told Officer Andrews that Nelson and his girlfriend lived there and he had paid the first three months rent.

¶ 41 Therefore, we conclude the girlfriend's consent to search was invalid in light of Nelson's refusal to consent. *See Randolph,* 547 U.S. at 120, 126 S.Ct. 1515. Similarly, to the extent the People contend that the lessee was authorized to consent to search, that consent suffers from the same infirmity, because the lessee's consent could not override Nelson's refusal to consent.

### V. The Search Warrant Was Otherwise Valid

¶ 42 Nevertheless, the People argue that the search warrant obtained after the police had unconstitutionally searched the home and discovered weapons and narcotics was valid because sufficient information contained in the warrant affidavit was lawfully obtained. We agree.

¶ 43 A search warrant may be issued if the application for the warrant contains probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized. *People v. Miller,* 75 P.3d 1108, 1112 (Colo. 2003). "Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *Id.*

¶ 44 In the event that an affidavit for a search warrant includes reference to evidence that was illegally obtained, "a valid search warrant may issue if the lawfully obtained evidence, considered by itself, establishes probable cause to issue the warrant." *People v. Hebert,* 46 P.3d 473, 481 (Colo.2002) (quoting *Bartley v. People,* 817 P.2d 1029, 1033 (Colo.1991)).

¶ 45 Whether a redacted affidavit is sufficient to establish probable cause is a question we review de novo. *Id.* at 481–82.

¶ 46 A review of the affidavit discloses that it contained information obtained after Nelson refused to consent to the search. In particular, the information we may not consider includes: (1) a backpack containing two pounds of marijuana and a firearm; (2) suspected methamphetamine and packaging materials; and (3) "high dollar" electronics and furniture. Therefore, we evaluate the affidavit absent these items.

¶ 47 The remaining information in the affidavit included:

- The information from a reliable confidential informant who had provided useful information in the past. The informant told police that he or she had been inside

the apartment within the past week and had observed an estimated one-quarter-pound package of methamphetamine;

- The informant met a Hispanic man possibly in his twenties named "Raul," who was in possession of the methamphetamine and had been recently released from federal prison;

- A criminal history check disclosed that Nelson had been convicted of felonies in both state and federal courts, including a conviction for possession with intent to distribute marijuana, and that he was presently on federal probation.

- Nelson's girlfriend stated that she "suspected" him of trafficking in narcotics;

- While conducting the knock and talk, Nelson attempted to retreat into the apartment and close the door when he realized police officers were there;

- Officer Andrews observed through the open apartment door a glass pipe commonly used for smoking marijuana; and

- After another man inside the apartment attempted to flee and Officer Andrews subdued him, he found methamphetamine on the other man's person.

¶ 48 Upon consideration of this remaining information, we conclude that sufficient facts in the redacted affidavit warranted a person of reasonable caution to believe that contraband or evidence of criminal activity was located inside the apartment. *Id.* at 483. The confidential informant stated that drug activity in that apartment had occurred recently in the informant's presence. The glass smoking pipe indicated the possible consumption of narcotics. Nelson's criminal history and his reaction when he realized police officers were at the door support a reasonable belief that he was aware of the alleged contraband in the apartment. The other man's flight from the residence when he realized officers were at the door further supported the belief that drugs would be found in the apartment. *See Revoal,* ¶ 18, 269 P.3d at 1242.

¶ 49 Therefore, given the preference we must afford warrants even in "doubtful or marginal cases," *see Hebert,* 46 P.3d at 482 (quoting *Illinois v. Gates,* 462 U.S. 213, 237,

103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), we conclude that the redacted affidavit provided probable cause for the issuance of the search warrant here.

## VI.   Exceptions to the Exclusionary Rule

¶ 50 Although we have concluded that the redacted affidavit provided probable cause for the issuance of the search warrant, we must consider whether the evidence of the backpack, the safes, and the drugs and packaging equipment must be suppressed because their discovery occurred prior to the issuance of the warrant. As discussed below, we conclude that further findings are required.

¶ 51 "The independent source . . . and inevitable discovery doctrines are well-established exceptions to the exclusionary rule, and permit the admission of evidence obtained in violation of the Fourth Amendment." *People v. Diaz,* 53 P.3d 1171, 1176 (Colo.2002). The inevitable discovery exception permits evidence "initially discovered in an unconstitutional manner to be [admitted], but only if the prosecution can establish that the information ultimately or inevitably would have been discovered by lawful means." *Id.* (citing *People v. Burola,* 848 P.2d 958, 962 (Colo.1993)).

¶ 52 The ability to obtain a lawful search warrant after an illegal search has occurred does not satisfy the inevitable discovery exception requirements. *Burola,* 848 P.2d at 963. "[T]he prosecution must show that the challenged evidence would probably have been ultimately or inevitably discovered by lawful means through an independent investigation taking place at the time the illegality occurred." *People v. Medina,* 25 P.3d 1216, 1226 (Colo.2001) (citing *People v. Breidenbach,* 875 P.2d 879, 889 (Colo.1994)).

¶ 53 Here, the record does not support the application of the inevitable discovery exception. While the subsequent search with the warrant would have led to the discovery of the backpack, the safes, and the drugs and packaging materials, there is no evidence indicating that the police were pursuing any independent investigation. *See id.*

¶ 54 Therefore, we turn to the independent source exception. "Under the independent source exception, the unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality." *People v. Schoondermark*, 759 P.2d 715, 718 (Colo.1988). When police officers conduct a partially unlawful search of the premises and then include information obtained from that search in the application for a warrant to search the same premises, the focus shifts to whether the officers would have sought the warrant even if they had not entered the house and observed the incriminating evidence. *Id.* at 719; *see Murray v. United States*, 487 U.S. 533, 542–43, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In certain cases, the court must also inquire into whether the unlawful information in the affidavit affected the district court's decision to issue the search warrant. *Schoondermark*, 759 P.2d at 719; *see People v. Cruse*, 58 P.3d 1114, 1120–21 (Colo.App.2002). However, because we have determined that the redacted affidavit was sufficient to establish probable cause to issue the warrant, the trial court need not make that inquiry here. *See Cruse*, 58 P.3d at 1120–21 (where lawfully obtained information in search warrant established probable cause, the court would have issued the search warrant even without the unlawful information).

¶ 55 As pertinent here, the trial court found the consent to search was valid and, consequently, did not reach the question of the validity of the search warrant or whether the evidence unlawfully obtained during the consent search affected the police officers' decision to obtain a warrant. *See Schoondermark*, 759 P.2d at 719. Based on *Schoondermark*, we conclude that the case must be remanded to the trial court for findings regarding the independent source exception to the warrant requirement. *See Murray*, 487 U.S. at 543–44, 108 S.Ct. 2529 (remanding for findings regarding independent source doctrine).

In making these findings the trial court should allow the parties an opportunity to supplement the existing record with additional evidence, and the People must bear the burden of establishing by a preponderance of the evidence that the officers would have sought the warrant even absent the information gained by the initial illegal entry.

*Schoondermark*, 759 P.2d at 719.

## VII. Conclusion

¶ 56 We conclude that the initial entry into the apartment did not violate Nelson's Fourth Amendment rights. Nevertheless, Nelson's girlfriend's consent to search the apartment was not valid as to him. After redacting the unlawfully discovered consent-search evidence from the search warrant affidavit, however, sufficient probable cause remained and the search warrant was valid.

¶ 57 Nonetheless, we conclude that a remand is required to determine whether the independent source exception to the exclusionary rule permitted the recovery and use at trial of the items seized pursuant to the warrant, despite the prior illegality of the consent search. *See Cruse*, 58 P.3d at 1120 (concluding that remand was necessary for further findings to determine whether "a later, lawful seizure is genuinely independent of an earlier, tainted one") (quoting *Murray*, 487 U.S. at 542, 108 S.Ct. 2529).

¶ 58 If the trial court determines that the independent source exception applies, then the judgment of conviction shall stand affirmed. If the court determines that the discovery of the items during the consent search prior to the search warrant affected the decision to seek a search warrant, the later, lawful search and seizure of evidence were not genuinely independent of the earlier, tainted search. *See id.*

¶ 59 In that event, the court should then determine whether the admission of the evidence recovered during the invalid consent search was harmless error in the context of the entire trial. *See* Crim. P. 52(a). If the court concludes the admission of the evidence cannot be found to be harmless, the judgment of conviction must be reversed and a new trial held without the admission of the tainted evidence. Here, the trial court must make findings on remand whether the officers would have sought the warrant absent the information gained as a result of the

invalid consents to search obtained from the girlfriend and the lessee.

¶ 60 The case is remanded for further proceedings as directed.

Judge DAILEY and Judge FOX concur.