Opinion by JUDGE WEBB
¶ 1 Based on an altercation with the female victim and a male bystander who intervened, defendant, Bradley Raymond Clemens, was convicted of assault in the second degree (female victim) and assault in the third degree (bystander). He appeals on four grounds: (1) the trial court abused its discretion in denying three of his challenges for cause; (2) the trial court erred in referring to the prospective jurors only by number; (3) the trial court erred in denying his motion to suppress because the police entered his home without a warrant and arrested him; and (4) the trial court abused its discretion in admitting evidence of the female victim's statements that Clemens had threatened to rape her and of Clemens' question to the booking officer whether she had accused him of rape.
¶ 2 We agree with Clemens' first contention, which raises an unresolved question of law in Colorado, reverse the judgment, and remand the case for a new trial.
I. The Trial Court Abused its Discretion in Denying Clemens' Challenges for Cause to Prospective Jurors 7, 10, and 12
¶ 3 During voir dire, a prospective juror, who was later dismissed for cause, raised concerns about his ability to return a not-guilty verdict if Clemens declined to testify. Defense counsel then asked the entire venire if others felt similarly. In response, prospective jurors 7, 10, and 12 each expressed similar concerns as to their ability to fairly weigh the evidence presented without hearing from Clemens.
Prospective juror 12 was the first to suggest "real concerns."
[Defense Counsel]: ... The question is the Judge says to you that the law does not require Mr. Clemens to testify. [A]re you going to find it hard to find him not guilty if you don't hear from him and hear an explanation out of his mouth?
Prospective Juror [12]: Probably.
[Defense Counsel]: Okay. You have some real concerns about that?
Prospective Juror [12]: Uh-huh.
¶ 4 Defense counsel asked the venire if anyone else agreed. Prospective juror 10 replied, "Yes, I just agree with them, too. I feel if you're not going to tell your side, you have something to hide." Counsel asked, "Even though the Judge may instruct you *835 that you can't use that as [an] inference of guilt, you have real concerns you would use that as an inference of guilt?" Prospective juror 10 again answered, "Yes."
¶ 5 Next, defense counsel asked prospective juror 7, "You have concerns that if Mr. Clemens doesn't testify as is his right, that you would have trouble following the Judge's instruction that you may not use his exercising of the right to remain silent, that you would use that against him?" Prospective juror 7 also replied, "Yes."
¶ 6 Following these exchanges, the trial court explained three bedrock principles of criminal law to the entire venire: the prosecution bears the burden of proof; the defendant is not required to testify; and if the defendant chooses not to testify, that fact cannot be used in jury deliberations.[1] In response, another juror expressed reluctance to apply the law, saying that he would hold Clemens' decision not to testify against him. This juror was also dismissed for cause.
¶ 7 Defense counsel then resumed voir dire and asked the venire whether "anybody ... still feels that if you don't hear from Mr. Clemens that would be a problem for you reaching a verdict of not guilty in this case." Two other jurors, who also were both dismissed for cause later, expressed concerns about their ability to fairly weigh the evidence without hearing from Clemens. Again, defense counsel turned to the venire and asked if "anybody else ha[d] anything more to say" on the matter. But this time, the venire was silent.
¶ 8 At the conclusion of voir dire, defense counsel challenged prospective jurors 7, 10, and 12 for cause based on their earlier statements. The court denied each challenge. As to prospective juror 12, the court explained:
I think 12 didn't-I did not see after my admonition to the jury about the question regarding the defendant not having to testify. I don't think that 12 gave this strong indication ... that she could not follow the instructions [of] the court, unlike [the other prospective jurors who were dismissed for cause], continued to maintain that position even after my admonition.
As to prospective jurors 7 and 10, the trial court added:
My recollection is that after I gave the instruction about not speculating and how that is an important part of our judicial system, one juror particularly noted that that helped explain it. And when I asked the rest of the panel if any of them could not follow that, there were no others that indicated [they could not] except for [a prospective juror dismissed for cause].
Defense counsel removed prospective jurors 7, 10, and 12 with peremptory challenges and exhausted all of his remaining challenges.
A. Standard of Review
¶ 9 Because of the trial court's superior position to assess a prospective juror's demeanor and credibility, People v. Young, 16 P.3d 821, 824 (Colo.2001), challenges for cause are reviewed for abuse of discretion, Medina v. People, 114 P.3d 845, 856 (Colo.2005). This standard is highly deferential. Carrillo v. People, 974 P.2d 478, 485-86 (Colo.1999).
¶ 10 But appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled."
*836 Morgan v. People , 624 P.2d 1331, 1332 (Colo.1981). Thus, although we must affirm if "the record contains a general statement by a juror that, despite any preconceived bias, he or she could follow the law and rely on the evidence at trial," People v. Phillips , 219 P.3d 798, 802 (Colo.App.2009), we will reverse if a prospective juror's statements "compel the inference that he or she cannot decide crucial issues fairly and there is no rehabilitative questioning or other counter-balancing information," People v. LePage , 2011 WL 544019, 397 P.3d 1074 (Colo.App. No. 09CA0676, Feb. 17, 2011) (internal quotation marks omitted), cert. granted on other grounds , No. 11SC235, 2011 WL 4015578 (Colo. Sept. 12, 2011).
B. Law
¶ 11 Many Colorado cases have addressed challenges for cause to prospective jurors who, as here, expressed a need to hear "both sides" before rendering a verdict. See, e.g., Morgan, 624 P.2d at 1332 (holding that trial court erred in denying challenge for cause to juror who, following the court's attempt to rehabilitate him, stated that he "could go along with it" but would "find it hard not hearing both sides of it" and he could not "picture one side of a trial"); LePage, 397 P.3d at 1083 (holding that trial court did not err in denying challenge for cause when the juror, who previously indicated a need to hear from the defendant, was rehabilitated); People v. Blackmer, 888 P.2d 343, 344-45 (Colo.App.1994) (holding that when jurors communicate "difficulty applying the principles of law unless [they] hear[ ] the defendant testify at trial," they should be dismissed for cause absent rehabilitation).
C. Application
¶ 12 The initial statements by prospective jurors 7, 10, and 12 established sufficient grounds to challenge them for cause. Unless they were rehabilitated, the trial court abused its discretion in denying the challenges for cause.
¶ 13 In People v. Hancock, 220 P.3d 1015, 1019 (Colo.App.2009), the division held that the trial court had abused its discretion in denying a challenge for cause to a juror who had made a disqualifying statement because the record showed neither successful rehabilitative questioning nor counter-balancing information. The division explained that a trial court should do one of three things when faced with a juror who indicates an unwillingness to apply the law: (1) dismiss the juror for cause; (2) follow-up with "effective rehabilitative questioning prior to denying the challenge for cause"; or (3) make a credibility finding sufficient to explain why the "statements of doubt in [the juror's] willingness or ability to follow the law should be disregarded." Id. at 1019-20.
¶ 14 Here, the trial court attempted to satisfy the second requirement by responding to the jurors' statements with a lengthy admonishment and then asking the venire whether it could apply the law as explained. Clemens does not dispute the adequacy of the admonition, nor does the record afford any basis for doing so.
¶ 15 But this leaves unanswered the question whether these prospective jurors' silence, despite repeated questions to the venire, constituted sufficient rehabilitation. Because no Colorado case has addressed whether such silence is sufficient rehabilitation, we consider evidentiary principles, cases from other jurisdictions dealing with rehabilitation based on silence, and Colorado cases on rehabilitation of prospective jurors. We conclude that, where a prospective juror has taken a position supporting a challenge for cause, that juror's silence following a question or questions to the entire panel does not constitute sufficient rehabilitation.
¶ 16 In certain circumstances, silence may be evidence of an affirmative response.[2] But *837 the silence of a prospective juror who has made a problematic statement raises two concerns.
¶ 17 First, "[s]ome prospective jurors undoubtedly find voir dire intimidating," United States v. Hill, 552 F.3d 541, 548 (7th Cir.2008), and thus, they may be more reluctant to volunteer a response when questions have been posed to the venire than when questioned individually. Second, a prospective juror's silence affords the trial court very little, if any, basis on which to make a credibility determination between the juror's earlier statement and later lack of response to a rehabilitative question. See, e.g., People v. Banks , 2012 COA 157, ¶ 110 (holding trial court within its discretion to determine "the juror's [verbal] assurance of fairness outweighed his statements of previous doubt[s]."); People v. Richardson , 58 P.3d 1039, 1042 (Colo.App.2002) (in resolving challenges for cause, trial courts must "assess ... the sincerity of potential juror's responses, including statements that linguistically may appear to be inconsistent").
¶ 18 For these reasons, we turn to the few other jurisdictions that have decided the question. But their answers to the question are split.
1. Yes, Silence Can Rehabilitate A Prospective Juror Who Previously Indicated an Unwillingness to Follow the Law
¶ 19 A panel of the Ninth Circuit has held that even if a juror had previously indicated an unwillingness to follow the law, "[i]n the context of the voir dire, [that juror's] failure to respond [to a question posed to the entire venire] can be construed as a commitment by [the juror] to follow the law." United States v. Martinez-Martinez, 369 F.3d 1076, 1082 (9th Cir.2004). The court explained that the highly deferential standard of review applied to challenge for cause rulings on appeal requires appellate courts to afford "great weight" to a trial court's assessment of a juror's silent response to a question posed to the venire. Id.
¶ 20 Similarly, the Missouri Court of Appeals has repeatedly held that "[a] venireperson's silence may constitute an unequivocal assurance of impartiality sufficient for the purpose of rehabilitation." State v. Garrison, 276 S.W.3d 372, 377 (Mo.Ct.App.2009) ; see also Edgar v. State, 145 S.W.3d 458 (Mo.Ct.App.2004) ; State v. Clark, 55 S.W.3d 398 (Mo.Ct.App.2001) ; State v. Bebermeyer, 743 S.W.2d 516 (Mo.Ct.App.1987). As the panel in Bebermeyer explained,
[i]f the jurors had been asked individually the questions the court asked them as a group and the jurors individually had given the same answers that the entire panel made, we would not have found an abuse of discretion in the court's failure to sustain defendant's objections for cause. Having made that determination, what is the effect of the manner in which the court asked the questions and received the responses?
743 S.W.2d at 520.[3]
2. No, Silence Cannot Rehabilitate A Prospective Juror Who Previously Indicated an Unwillingness to Follow the Law
¶ 21 The District of Columbia, Florida, New York, and Texas have each concluded that jurors' silence in the face of a question posed to the venire is insufficient to rehabilitate previous problematic statements.
¶ 22 The D.C. Court of Appeals held that when prospective jurors indicated their potential bias, their silence in response to questions posed to the venire was insufficient to rehabilitate them. Doret v. United States, 765 A.2d 47, 56 (D.C.2000). While recognizing that "trial judges often operate under enormous pressures to cope with very substantial caseloads, frequently finding themselves on 'circuit overload,' and thus, pressed to move trials along," the court concluded that such considerations do not overcome a defendant's Sixth Amendment right to an impartial jury and fair trial. Id. To safeguard this right when faced with prospective juror bias, "the trial judge has an obligation to probe further, and to elicit more than a nod of the head or a simple 'yes' or 'no'
*838 response, to ensure their impartiality and fairness as jurors." Id.
¶ 23 Arriving at the same conclusion, the Louisiana Court of Appeals held that posing five questions to prospective jurors regarding their impartiality and inviting them to raise their hands to indicate an inability to apply the law as given are insufficient as "a method of rehabilitation ... to rebut a juror's unambiguous expression of partiality resulting from an individual questioning." State v. Lewis, 724 So.2d 830, 834 (La.Ct.App.1998). Instead, when a defendant identifies any partiality of prospective jurors, including "statements that they could not accept the law as given if the defendant failed to take the stand on his behalf," id. at 833, rehabilitation must occur "by obtaining [the prospective jurors'] unequivocal and affirmative expressions that they could overcome their initial feelings such as to apply the law and evidence," id. at 834.
¶ 24 Likewise, New York's highest court held that "the collective acknowledgment by the entire jury panel that they would follow the Judge's instructions ... was insufficient to constitute an unequivocal declaration of impartiality from [the prospective juror]." People v. Arnold, 96 N.Y.2d 358, 729 N.Y.S.2d 51, 753 N.E.2d 846, 851-52 (N.Y.2001). Rather, "nothing less than a personal, unequivocal assurance of impartiality can cure a juror's prior indication that she is predisposed against a particular defendant or particular type of case." Id. , 729 N.Y.S.2d 51, 753 N.E.2d at 852.
¶ 25 For the following four reasons, the latter approach is both better reasoned and more consistent with Colorado law.
¶ 26 First, "trial by jury in criminal cases is fundamental to the American scheme of justice." Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). And as "a basic requirement of due process," "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." Neb. Press Ass'n v. Stuart, 427 U.S. 539, 551, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (internal quotation marks omitted); see also People v. Rodriguez, 914 P.2d 230, 260 (Colo.1996) ("A criminal defendant has a fundamental right to trial before an impartial jury."). But without a guaranty of impartiality, a defendant is deprived of this fundamental right, in violation of both the United States and the Colorado Constitutions.See, e.g., People v. Lefebre, 5 P.3d 295, 300 (Colo.2000) ("A defendant has a constitutional right to a fair and impartial jury." (citing U.S. Const. amend. VI ; Colo. Const. art. II, § 16 )). Mere silence does not sufficiently protect such a right.
¶ 27 Second, in People v. Sandoval, 706 P.2d 802, 804 (Colo.App.1985), the division held that rehabilitation requires nothing less than a "clear[ ] retreat" from previous statements indicating bias or an unwillingness to apply the law. And in People v. Wilson, 114 P.3d 19, 23 (Colo.App.2004), the division required "a statement from the prospective juror that he could render or would try to render an impartial verdict according to the law and evidence, that he would apply the facts to the law and follow the instructions of the court, or that he would presume defendant innocent until proved guilty." But silence does not constitute either a "clear retreat" or "a statement" indicating a willingness to follow the law.
¶ 28 Third, as explained by the New York Court of Appeals, adequate rehabilitation requires prospective jurors to "address [their] personal attitudes" and "to confront the crucial question whether [they] could be fair to [the] defendant in light of [their] expressed predisposition[s]." Arnold, 729 N.Y.S.2d 51, 753 N.E.2d at 852. But silence in the face of group questions does not force prospective jurors to engage in this type of critical self-reflection.
¶ 29 Fourth, a categorical rule requiring an affirmative response from prospective jurors who have made problematic statements recognizes the trial courts' unique opportunity to assess juror demeanor. See, e.g., Young, 16 P.3d at 825-26 ("[O]nly the trial court can assess accurately the juror's intent from the juror's tone of voice, facial expressions, and general demeanor."). But absent individual questioning of prospective jurors who have made disqualifying statements, for a trial court to make the credibility findings that are crucial to appellate review on the prospective jurors' silence alone would be, at best, very difficult. See Hancock, 220 P.3d at 1016 ("[D]enials of challenges for cause *839 have been reversed where prospective jurors have made statements demonstrating bias and there are no other statements in the record that would permit the reviewing court to affirm based on deference to the trial court's assessment of unclear or ambiguous responses.").
¶ 30 Accordingly, because the statements of prospective jurors 7, 10, and 12 indicating unwillingness to follow the law were not overcome by their responses to individual questioning, we conclude that the trial court abused its discretion in denying Clemens' challenges for cause. Therefore, the judgment must be reversed and the case is remanded for a new trial.[4]
¶ 31 In so holding, we do not diminish the value of questions posed to the entire venire, where no prospective juror has already indicated unwillingness or inability to return an impartial verdict. See People v. Pena-Rodriguez, 2012 COA 193, ¶¶ 17-18 ("[N]o venire member responded when asked about having feelings 'for or against the defendant.' "), cert. granted, No. 13SC9 (Colo. Aug. 19, 2013) ; see also Bryant v. Brady, 244 Ark. 807, 427 S.W.2d 179, 180 (Ark.1968) ("[W]here other jurors understood the questions and responded [disclosing their relationship with the party], we must accept the jurors' silence as a responsive answer to the court's questions.").[5]
II. The Warrantless Entry into Clemens' House Was Lawful, Because the Police Officers Reasonably Believed that the Female Victim Had Apparent Authority to Consent
¶ 32 Although we reverse the judgment on challenge for cause grounds, we address Clemens' contention that the trial court erred in denying his motion to suppress because the suppression ruling could affect the retrial.
¶ 33 When the police arrived at the scene, they found three male bystanders and the female victim, bloodied around the mouth and appearing intoxicated. One of the bystanders had attempted to intervene when he saw a male holding a woman down, striking her with what he said looked like a broken golf club. When he sought to intervene, the perpetrator struck him with the golf club. One of the other bystanders kicked the perpetrator in the head, and the man ran off. The third male bystander heard the shouts for help and called 911.
¶ 34 While the eyewitnesses told the responding officers that the perpetrator fled the scene into one house, the female victim told them that she lived with Clemens at a different address in the same block. The officers did not obtain a warrant, but immediately and forcefully entered Clemens' house, which the female victim had correctly identified, and arrested him.
A. Standard of Review
¶ 35 "A ruling on a motion to suppress requires the trial court to make findings of historical fact and apply controlling legal standards to the established facts." People v. Nelson, 2012 COA 37, ¶ 14, 296 P.3d 177. "In reviewing a trial court's denial of a motion to suppress, we defer to that court's factual findings and reverse only where its conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard."
*840 People v. Trusty, 53 P.3d 668, 672 (Colo.App.2001). We review the trial court's ultimate legal conclusions de novo. People v. Prescott, 205 P.3d 416, 419 (Colo.App.2008).
B. Law
¶ 36 A warrantless entry into a home is presumptively unconstitutional unless an exception to the warrant requirement applies. People v. Strimple, 2012 CO 1, ¶ 20, 267 P.3d 1219. One such exception is when officers receive valid consent to enter by one with "common authority" over the premises. People v. Sanders, 904 P.2d 1311, 1313 (Colo.1995). But absent actual common authority, a warrantless entry may be constitutional if the person who gave consent reasonably appeared to have such authority. Petersen v. People, 939 P.2d 824, 830 (Colo.1997).
¶ 37 When applying the apparent authority doctrine, the key question is "whether a police officer's belief that a third party had the authority to consent to a search is objectively reasonable." People v. McKinstrey, 852 P.2d 467, 472 (Colo.1993). In ambiguous circumstances, police officers must make "reasonable inquiries" into the third party's authority. Id. at 473.
C. Application
¶ 38 The following evidence admitted at the suppression hearing supports the trial court's finding that the officers reasonably believed the female victim had authority to consent to the entry:
• She was found unclothed in the street in front of the house, in the middle of the night, suggesting a connection with the house;
• She explained that her keys, an indicator of common authority, were inside the house, along with her clothing;
• She told the officers that she lived in the house with Clemens; and
• She granted them permission to forcibly enter the house, if necessary, which would be unlikely from a person without any authority over the premises.
¶ 39 In Clemens' view, however, this evidence presented "at best, ambiguous circumstances." He argues that the officers should have made additional inquiries into her authority because they received inconsistent statements about Clemens' address. But under the circumstances of an active crime scene involving multiple assaults and victims, this inconsistency does not create sufficient ambiguity to hold that the trial court abused its discretion in finding the officers' belief to have been reasonable.
¶ 40 Accordingly, we conclude that under the apparent authority doctrine, the officers properly entered Clemens' house without a warrant.[6]
III. Remaining Evidentiary Contentions
¶ 41 We decline to address Clemens' evidentiary contentions because how they may arise on retrial is indeterminable.
IV. Conclusion
¶ 42 The judgment of conviction is reversed and the case is remanded for a new trial consistent with this opinion.
JUDGE DUNN concurs.
JUDGE BERNARD concurs in part and dissents in part.

"As I instructed you earlier, in our system of justice, it is the prosecution's burden in every case to present the evidence to prove the case. If the prosecution fails to present sufficient evidence, then you must find the defendant not guilty.
"Another very important part of our judicial system is that the defendant never has to present any evidence or testify themselves. And you cannot use th[e] fact that a defendant does not take the stand as any evidence one way or the other. [I]t's just not a factor to be taken into consideration....
"The only evidence that matters is the evidence that comes from the witness stand. And a defendant for whatever reason they want to can choose not to take the stand.... Anyone here who cannot follow that instruction, that if the prosecution fails to present enough evidence to prove beyond a reasonable doubt every element of the offense, is there anyone here who could not find the defendant not guilty? And if the prosecution[ ] failed to present enough evidence, would the fact that the defendant may not testify make you change your mind and say now I'm going to find him guilty even though there wasn't evidence to prove the case; anyone who would do that?"

For instance, while
silence generally is thought to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others[,] [i]n some situations, ... where the normal reaction is to speak out in response to a statement, silence may have some probative value.
People v. Quintana , 665 P.2d 605, 610 (Colo.1983) (citation and internal quotation marks omitted). For that reason, courts allow evidence of defendants' failure to deny accusations made against them when they can hear them and could deny them without emotional or physical impediment. Id. And they allow evidence of victims' failure to timely report an alleged sexual assault in certain circumstances. Id. at 610 n. 6.

Other courts have also considered jurors' silence, as a negative response, but only where failure to disclose information would have suggested bias after the panel was asked questions "reasonably calculated" to reveal such bias.E.g., State v. Akins, 867 S.W.2d 350, 355-56 (Tenn.Crim.App.1993).

This result is dictated by People v. Macrander, 828 P.2d 234 (Colo.1992), which the supreme court is revisiting. See People v. Novotny, 2011 WL 484366 (Colo. No. 10SC377, Jan. 31, 2011). We decline to address Clemens' contention that the trial court erred in referring to the prospective jurors only by number because it is unlikely to recur on retrial. See Perez v. People, 2013 CO 22, 302 P.3d 222.

Courts' analyses of questions posed to the entire venire regarding pretrial publicity illustrate the utility and limitations of such questions. In cases involving extensive pretrial publicity, "a general question [whether they have been biased by the media] directed to the entire group of prospective jurors is inadequate." United States v. Giese, 597 F.2d 1170, 1183 (9th Cir.1979). But "in cases of less publicity ... [s]everal general questions addressed to the entire panel of jurors, followed by individual questioning of jurors who respond affirmatively to the initial inquiries, may be sufficient if it becomes clear that few jurors have any knowledge of the case." Id. A juror's previous indication of an unwillingness to follow the law is like the probable bias arising from exposure to extensive pretrial publicity. In such circumstances, individualized questioning "may be the only means of assuring a defendant his right to an impartial jury." United States v. Dansker, 537 F.2d 40, 56 (3d Cir.1976).

Because of this conclusion, we need not address the exigent circumstances exceptions to the warrant requirement.